The appellant, Preston Branch, was indicted and convicted for the offense of murder, as proscribed by § 13A-6-2, Code of Alabama 1975. He was subsequently sentenced to imprisonment for life.
As his sole issue, Branch who is black contends that the trial court denied his motion for mistrial or for new trial on the assertion that the prosecutors' use of their peremptory strikes to remove members of his racial group from serving on the petit jury violated the Equal Protection Clause. We review the trial court's ruling with the guidelines of Batson v.Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), which was released just five days prior to Branch's trial. InBatson, the Supreme Court substantially changed the evidentiary burden, previously set forth in Swain v. Alabama, 380 U.S. 202,85 S.Ct. 824, 13 L.Ed.2d 759 (1965), placed on a criminal defendant who asserts an equal protection claim based on the prosecutor's alleged racially discriminatory use of peremptory challenges. Fleming v. Kemp, 794 F.2d 1478, 1483 (11th Cir. 1986).
We must apply the principles of Batson to the particular circumstances of this case, which are, as follows: On May 6, 1986, after voir dire examination of the petit jury venire and after the prosecution exercised its first three strikes to strike blacks, Branch's counsel interrupted,
 "I believe based on my experience with this government prosecutor, Mr. Nelson, he had a record of using his peremptory challenges to rid the venire of blacks.
 "I had one three weeks ago, he used all seven strikes to eliminate blacks. And in light of Batson v. Kentucky, I believe the defendant is being denied Fifth, Fourteenth and Sixth Amendment rights to right of a fair trial by this prosecutor, systematically exclusion of black people."
The trial court responded, "Well, I have tried many cases with the two prosecutors, I can't agree that in my experience it is systematically excluding blacks." In addition, the court required the prosecutors to make a note of their reasons for their strikes and, if a conviction resulted from the trial, Branch's contention would be resolved in a motion for new trial. Defense counsel made no objection to this procedural arrangement.
Immediately after the jury rendered its verdict on May 8, defense counsel moved for a mistrial. Thereafter, the court examined the jury selection within the context ofBatson. The parties stipulated that the prosecution exercised six of its seven strikes to exclude six of the seven blacks included on the venire. Then, the two prosecutors gave specific reasons for striking each particular venire person, which are summarized, as follows:
 HARRIS: One of the prosecutors participated in a "bust" five months before, at a home close to Harris's residence, and saw Harris during the "bust"; he could not recall Harris's relationship to the person arrested, so he thought it best to strike him. Moreover, Harris was similar in age and physical appearance to Branch.
 MAYNOR: As an employee of Gold Kist, Maynor was not desirable as a juror because it is the prosecutors' general experience that Gold Kist's employees have not been attentive as jurors and a number of employees are being investigated for a variety of crimes.
 MEADOWS: Meadows's background as an unemployed, former student was not attractive, and she "appeared . . . to have kind of a dumbfounded or bewildered look on her face, as if she didn't know why she was here, or what she was supposed to do."
 MONTGOMERY: Being a scientist, Montgomery's presence on the jury would have put too great a burden on the prosecution, considering the background of the case and "knowing the problems with one hundred percent mathematical *Page 607 
aspects of a case like this"; the prosecutors did not want a "scientific application in the decision."
 PARMER: Parmer's general appearance was unkempt. Moreover, he worked in "credit management," and because the prosecutors were not able to question him about his specific job, they deemed it too risky to leave Parmer on the jury. Parmer appeared to be a gruff collector and the prosecution did not want a juror who would be at odds with anyone else on the jury.
 KELLEY: As a single female who was about the same age as Branch, Kelley "might feel as though she were a sister, or that type thing and have some pity on the person." Moreover, Kelley was observed frowning and the prosecutors did not want, on the jury, a person who was in a bad mood. Finally, her response to defense counsel was much more favorable than her response to the prosecutors.
After hearing these explanations, the court noted that it considered the prosecutors to be credible and that it trusted them when they stated things in their capacity of court officers. The court then reserved ruling on Branch's motion for mistrial.
On May 23, another hearing was held on the Batson contention, as presented in Branch's "motion for new trial or for mistrial." After the court heard further argument, the court denied Branch's motion.
After reiterating that the prosecution's privilege to strike individual jurors through the exercise of peremptory challenges is subject to the scrutiny of the Equal Protection Clause,476 U.S. at 88, 106 S.Ct. at 1718, the Batson Court explained the evidentiary procedure and respective burdens of proof to be observed in confronting a claim of purposeful discriminatory selection of the petit jury. First, the defendant has the burden to establish a prima facie case of purposeful discrimination, which no longer requires a showing that the prosecution's practice in past cases demonstrates a pattern of discriminatory use of strikes. Id. at 91-94,106 S.Ct. at 1720-21. Rather, the defendant's burden may be met by focusing solely on evidence concerning the prosecution's exercise of peremptory strikes in the defendant's trial, id. at 96-98,106 S.Ct. at 1722-23, as follows:
 "[T]he defendant first must show that he is a member of a cognizable racial group, Castaneda v. Partida, [430 U.S. 482], at 494, [97 S.Ct. 1272], at 1280 [51 L.Ed.2d 498] [(1977)], and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits 'those to discriminate who are of a mind to discriminate.' Avery v. Georgia, [345 U.S. 559], at 562, [73 S.Ct. 891], at 892 [97 L.Ed. 1244] [(1953)]. Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race. This combination of factors in the empanelling of the petit jury, as in the selection of the venire, raises the necessary inference of purposeful discrimination."
476 U.S. at 97, 106 S.Ct. at 1723.
If, from "all relevant circumstances," the trial court determines that the defendant has established a prima facie case of discrimination, the burden shifts to the prosecution to present "a neutral explanation" for striking black venire persons. Id. "Although a prosecutor ordinarily is entitled to exercise permitted peremptory challenges 'for any reason at all, as long as that reason is related to his view concerning the outcome' of the case to be tried" and not based solely on the potential jurors' race or on the assumption that black jurors as a group will be unable to impartially consider the prosecution's case against a black defendant, id. at 89,106 S.Ct. at 1718-19 (quoting United States v. Robinson,421 F. Supp. 467, 473 (D.C.Conn. 1976), mandamus granted sub nom.United States v. Newman, 549 F.2d 240 (2nd Cir. 1977); "the prosecutor must give a 'clear *Page 608 
and reasonably specific' explanation of his 'legitimate reasons' for exercising the challenges." 476 U.S. at 98, n. 20,106 S.Ct. at 1724 n. 20 (quoting Texas Dept. of CommunityAffairs v. Burdine, 450 U.S. 248, 258, 101 S.Ct. 1089, 1096,67 L.Ed.2d 207 (1981)). On scrutinizing the prosecutor's reasons for exercising his strikes as he did, the trial court is guided by the following:
 "[T]he prosecutor may not rebut the defendant's prima facie case of discrimination by stating merely that he challenged jurors of the defendant's race on the assumption — or his intuitive judgment — that they would be partial to the defendant because of their shared race. Cf. Norris v. Alabama, 294 U.S. [587], at 598-599, 55 S.Ct. [579], at 583-84 [79 L.Ed. 1074] [(1935)]; see Thompson v. United States, [469] U.S. [1024], [1025], 105 S.Ct. 443, 444 [83 L.Ed.2d 369] . . . [1984] (BRENNAN, J., dissenting from denial of certiorari). . . . Nor may the prosecutor rebut the defendant's case merely by denying that he had a discriminatory motive or 'affirming his good faith in individual selections.' Alexander v. Louisiana, 405 U.S. [625], at 632, 92 S.Ct. [1221], at 1226 [31 L.Ed.2d 536] [(1972)]. . . . The prosecutor therefore must articulate a neutral explanation related to the particular case to be tried."
476 U.S. at 97-98, 106 S.Ct. at 1723 (footnote omitted).
Then, the trial court must determine if the defendant has established purposeful discrimination. Id. at 97-99,106 S.Ct. at 1723-24. This determination is a finding of fact; accordingly, "[s]ince the trial judge's finding in the context under consideration here largely will turn on evaluation of credibility, a reviewing court ordinarily should give those findings great deference." Id. at 98 n. 21, 106 S.Ct. at 1724
n. 21. "Thus, we may only reverse the trial judge's determination that the prosecution's peremptory challenges were not motivated by intentional discrimination if that determination is clearly erroneous." United States v. Mathews,803 F.2d 325, 330 (7th Cir. 1986).
The trial court, in the instant case, followed the guidelines of Batson with extreme caution and sensitivity, as indicated by the trial court's order which states, in part, as follows:
 "Assuming for purposes of argument that the defendant has made a prima facie showing of purposeful exclusion, the question is whether the State has overcome the showing by articulating 'neutral' explanations for their strikes.
 "In his concurring opinion, Justice Marshall recognizes that 'trial courts are ill equipped to second-guess facially neutral reasons for juror strikes cited by prosecutors.'
 "Justice White states, 'Much litigation will be required to spell out the contours of the Court's Equal Protection holding today, and the significant effect it will have on the conduct of criminal trials cannot be gainsaid. . . .'
 "In deciding whether the defendant has established purposeful discrimination in the above styled case, the following should be noted:
 "It is undisputed that the facts of this apparently senseless execution style murder disclose a 'black on black' offense; moreover, that the only evidence linking the defendant to the offense comes from the eye witness testimony of a black male on-looker.[1] Alibi testimony supportive of defendant's testimony came from defendant's own brothers.
 "The court observed and heard lengthy voir dire examination of the venire — questions propounded for the State by Mr. Nelson, many questions were of a 'one to one' nature, touching on the respondent's prospective sentiments and experiences. Mr. Wallace, Mr. Nelson's co-counsel, was taking notes during the exchange between Nelson and the jurors.
 "Mr. Nelson and Mr. Wallace took notes during the exchange between Mr. Turberville and the prospective jurors. *Page 609 
 "At the initial request for a mistrial made in chambers after the State's third peremptory strike, the court requested the State attorneys to defer giving their reasons for their strikes, to make notes as to their reasons.
 "At the post conviction hearing, conducted moments after the jury was dismissed, state's counsel each stated that they had followed the court's instructions and then proceeded to deliver their reasons for peremptory challenges.
 "The court is of the opinion that the State has satisfactorily rebutted the prima face 'showing' discussed in Batson:
 "Other than defense counsel's protestations, there is absolutely no evidence to suggest that state's counsel's peremptory challenges were the product of racial bias.
 "Thus, defendant's motion for mistrial or, in the alternative, for a new trial is denied." (Footnote omitted.)
We find that the trial court's treatment of Branch's motions and its ruling were proper, for the prosecution's explanations for its strikes were neutral, clear and reasonably specific, legitimate, and related to the outcome of the case. After considering all the relevant circumstances, as the trial court did, we also conclude that Branch failed to carry his ultimate burden of proving discriminatory selection of the petit jury; thus, we cannot say that the court's ruling was "clearly erroneous."
Accordingly, the judgment of the trial court is affirmed.
AFFIRMED.
ALL Judges concur.
[1] The court in United States v. Mathews noted that the fact that the key witnesses for both sides were black discounts any advantage that a discriminating prosecutor might perceive in striking blacks.