531 So.2d 22 (1987)
Charles Edward OWENS
v.
STATE.
4 Div. 536.
Court of Criminal Appeals of Alabama.
April 14, 1987.
On Return to Remand July 19, 1988.
Michael J. Bellamy, Phenix City, for appellant.
Charles A. Graddick, Atty. Gen., and M. Beth Slate and William D. Little, Asst. Attys. Gen., for appellee.

AFTER REMAND FROM THE SUPREME COURT OF ALABAMA
PATTERSON, Judge.
Pursuant to the authority of Ex parte Owens, 531 So.2d 21 (Ala.1987), we remand this case to the trial court with instructions that if the court determines that the facts establish a prima facie showing of purposeful discrimination under Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 *23 L.Ed.2d 69 (1986), the court must give the prosecutor the opportunity to come forward with race-neutral explanations for his use of the peremptory strikes used to strike members of appellant's race. If the prosecutor is unable to do so, then appellant is entitled to a new trial. See Ex parte Jackson, 516 So.2d 768 (Ala. 1986); Acres v. State, [Ms. 3 Div. 843, February 10, 1987] (Ala.Cr.App.1987). Upon disposition, the court shall make written findings of fact on this issue and make due return to this court.
REMANDED WITH INSTRUCTIONS.
All Judges concur.

ON RETURN TO REMAND
PATTERSON, Judge.
On return to remand, the trial court submitted the following findings:
"This case has been remanded from the Alabama Court of Criminal Appeals for a hearing to be held to determine whether the State's jury strikes violated the precepts of Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712 [90 L.Ed.2d 69] (1986). A hearing was held at which the defendant and his counsel were present.
"The Court makes the following findings:
"a. 71 persons composed the venire from which the jury was selected.
"b. 16 of the 71 persons were black.
"c. The State had 24 strikes and the selection of one alternate.
"d. The defendant had 23 strikes and the selection of one alternate.
"e. 15 black persons were stricken by the State.
"f. The alternate juror left by the State was black.
"g. The defendant struck 23 whites.
"h. The jury was as follows:
"i. the 12 regular petit jurors were white;
"ii. one alternate juror was black; and
"iii. one alternate juror was white.
"i. The two alternate jurors were excused from service before the jury began to deliberate.
"j. Defendant is black.
"k. Defendant has proven a prima facie showing [of] racial selection of the jury by the State.
"l. The district attorney was given the opportunity to explain his reasons for striking members of defendant's race.
"m. The district attorney has articulated race-neutral explanations as reasons for his strikes."
In reviewing these findings, we recognize that "[w]e may only reverse the trial judge's determination that the prosecution's peremptory challenges were not motivated by intentional discrimination if that determination is clearly erroneous." Ex parte Branch, 526 So.2d 609 (Ala.1987) modified on reh'g, (December 4, 1987) (quoting this court's opinion in Branch, 526 So.2d 605, 608 (Ala.Cr.App.1986)). See also Lockett v. State, 517 So.2d 1346, 1349-50 (Miss.1987), and cases cited therein. In applying this "clearly erroneous" standard of review, we find the following to be helpful:
"A finding of discrimination, or a finding of no discrimination, is a finding of fact. Anderson v. Bessemer City, 470 U.S. 564, 573 [105 S.Ct. 1504, 1511, 84 L.Ed.2d 518] ... (1985). In a Batson context, the Supreme Court observed that because the trial judge's findings `largely will turn on evaluation of credibility, a reviewing court ordinarily should give those findings great deference.' Batson, 476 U.S. at 98, n. 21 [106 S.Ct. at 1724 n. 21].... `[F]indings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of witnesses.' Anderson, 470 U.S. at 573 [105 S.Ct. at 1511] ...., quoting F.R.C.P. 52(a).
"`[A] finding is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.' Anderson, 470 U.S. at 573 [105 *24 S.Ct. at 1511] ..., citing United States v. United States Gypsum, 333 U.S. 364, 395 [68 S.Ct. 525, 542, 92 L.Ed. 746] ... (1948). Thus, if the trial court's `account of the evidence is plausible in light of the record viewed in its entirety, [an appellate] court may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.' Id., [470 U.S. at 574, 105 S.Ct. at 1511]."
State v. Antwine, 743 S.W.2d 51, 66 (Mo. 1987) (en banc), cert. denied, ___ U.S.___, 108 S.Ct. 1755, 100 L.Ed.2d 217 (1988). In reviewing the lower court's ruling, we have been mindful that it is not our function to decide this issue de novo, to "duplicate the role of the lower court." Anderson v. Bessemer City, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985).
However, we find that the court's ruling that the prosecutor articulated race-neutral explanations for his strikes is "clearly erroneous." During the hearing on remand, the following occurred:
"MR. DAVIS [prosecutor]: As to venire person 71, that venire person was a single male who was in the same age class as the defendant, and for that reason we struck him, considering that there were a number of venire persons that we had a desire to protect. We excluded that venire person based on his age and single status.
"...
"MR. BELLAMY [defense counsel]: That was the overwhelming factor in the strike of that juror?
"MR. DAVIS: Judge, I don't know what overwhelming is supposed to mean but that was the primary reason that we struck him.
"MR. BELLAMY: Were there other reasons or other factors that you looked at in striking this particular juror?
"MR. DAVIS: I would say that the fact that he was the same race as the defendant was a factor.
"MR. BELLAMY: The fact that he was the same race was a factor? Can you rate that as to what factor or how did it go on the list?
"MR. DAVIS: No.
"MR. BELLAMY: Can you give it a list
"MR. DAVIS: I would say it was not the most important factor.
"MR. BELLAMY: But you do confess that it was in fact a factor?
"MR. DAVIS: I would say it was a factor, yes.
"...
"MR. BELLAMY: ... If in fact that juror indicated, on questioning, that he would give greater weight to the testimony of a police officer when compared to that of another witness, would that not be an indication that you wanted to keep that juror, Mr. Davis?
"MR. DAVIS: Well, Mr. Bellamy, many times that's an indication that that individual wants to be on the jury, and very often I have found that people that specifically want to be on the jury do not make the best venire persons as a juryman for the state.
"...
"MR. BELLAMY: ... At the time of the striking of the jury ..., would it not have been a preference given from your standpoint to a juror, as in No. 71, who would indicate he had no reservations about giving the death penalty? Would that not be true, Mr. Davis?
"MR. DAVIS: Well, I would certainly prefer a jury person that had no reservations about giving the death penalty. Obviously it didn't make the difference in this case because I struck that venire person."
In discussion of the striking of Juror No. 20, the following occurred:
"MR. DAVIS: Juror No. 20, if it please the Court, was unemployed; she was not in school, as best I recall; and because of her unemployed status and the factand her age, we struck that juror person, venire person.
"MR. BELLAMY: Mrs. Epps? You were aware that Mrs. Epps was black, is that correct, Mr. Davis?
"MR. DAVIS: I was as aware that she is black as I was aware that any other person that I could see to be black was *25 black, Mr. Bellamy, as I'm aware that you are black.
"...
"MR. BELLAMY: Mr. Davis, would not the fact that Juror No. [20] had no reservations about the death penalty make her a more favorable juror to the State of Alabama?
"MR. DAVIS: It would certainly make her a more favorable juror than someone who was opposed to the death penalty, I would think, yes, but other factors outweighed that, in my view. I would say also that I considered her sex, as well as her age and the fact that she was unemployed.
"MR. BELLAMY: The fact that she was a female, unemployed, and black; is that correct?
"MR. DAVIS: I would say that all three of those factors came into play, yes.
"MR. BELLAMY: All three; thank you.
"MR. DAVIS: The fact that she was a female of the same race as the defendant was not something that I was oblivious to. But the primary reason I struck her was because of her youthfulness and the fact that she was unemployed."
In our review of the trial court's ruling in regard to the prosecutor's reasons for striking Juror No. 71 and Juror No. 20, we hold foremost in our analysis the following mandate by the Batson Court:
"Although a prosecutor ordinarily is entitled to exercise permitted peremptory challenges `for any reason at all, as long as that reason is related to his view concerning the outcome' of the case to be tried, United States v. Robinson, 421 F.Supp. 467, 473 (Conn.1976), mandamus granted sub nom. United States v. Newman, 549 F.2d 240 (CA2 1977), the Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race or on the assumption that black jurors as a group will be unable impartially to consider the State's case against a black defendant."
476 U.S. at 89, 106 S.Ct. at 1719. In our attempt to apply this mandate to the instant case, we find the following comments to be apropos:
"Unresolved Issue: Mixed Motives
"The heart of the Batson v. Kentucky holding is at 476 U.S. at 89 [106 S.Ct. at 1719]...:
"`[T]he Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race.' (Emphasis supplied.)
"The adverb `solely' is a teaser. What should be the court's response where the prosecutor feels two or more antipathies toward a challenged venireman, one of which is unabashedly racial but the others of which are not? If any one of the antipathies, standing alone, would have been sufficient to trigger the challenge, is the situation different from that in which only the combination of antipathies was sufficient to trigger the challenge? There appears to be wisdom ... in leaving such matters in the broad discretion of the trial judge."
Chew v. State, 71 Md.App. 681, 527 A.2d 332, 344, cert. granted, 311 Md. 301, 534 A.2d 369 (1987).
We agree that such matters must be left to the broad discretion of the trial court. Simply because race is incidentally mentioned by the prosecutor in his rendition of reasons for exercising his strikes as he did does not, as a matter of law, establish purposeful discrimination. For example, "[w]hile this rule [cited above] interdicts the exercise of peremptory challenges for purely racial reasons, it does not forbid challenges of minority jurors for legitimate reasons tangentially connected with their race." United States v. Brown, 817 F.2d 674, 676 (10th Cir.1987) (wherein the court recognized that an affinity between a potential juror and defense counsel, both of whom are black, is a legitimate reason if supported by fact and not surmise).
Moreover, we must view the Court's "teaser" in light of its more specific guidelines, which are as follows: "The prosecutor... must articulate a neutral explanation related to the particular case to be tried," 476 U.S. at 98, 106 S.Ct. at 1723 (footnote omitted), and "the prosecutor must give a `clear and reasonably specific' explanation of his `legitimate reasons' for *26 exercising the challenges," id. at n. 20 (quoting Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 258, 101 S.Ct. 1089, 1096, 67 L.Ed.2d 207 (1981)).[1] Thus, "Batson states the explanation must be (1) neutral, (2) related to the case to be tried, (3) clear and reasonably specific, and (4) legitimate." State v. Butler, 731 S.W.2d 265, 268 (Mo.App.1987). The Court warned that, if its guidelines were not enforced, the Equal Protection Clause "would be but a vain and illusory requirement." 476 U.S. at 98, 106 S.Ct. at 1723 (quoting Norris v. Alabama, 294 U.S. 587, 598, 55 S.Ct. 579, 583, 79 L.Ed. 1074 (1935)). We fail, at this juncture, to see how any explanation can meet the four articulated requirements if it is based, in part, on race unless, of course, it falls within the exception recognized by United States v. Brown. However, because the trial courts will be confronted, through time, with limitless explanations that they must review, we find it prudent to lay down no ironclad rule, but leave such to the discretion of the trial court, to be reviewed by the "clearly erroneous" standard.
Here, we find that three of the four Batson criteria were not met by the prosecutor in his explanations for striking the two venirepersons. Although each of the explanations, as a whole, is reasonably specific and can possibly be considered to be clear, each, without question, is not neutral, related to the case to be tried, and legitimate. We cannot accept his consideration of the race of the two venirepersons as part of a "race-neutral" explanation. Here, the record fails to support even an intimation that the two venirepersons were struck for a legitimate reason tangentially connected with their race. We cannot assume that such a reason exists just because of racial identity. Batson; United States v. Brown. Thus, based upon the record before us, we are constrained to find the court's ruling "clearly erroneous."[2]
"It is important to emphasize, as [the court] did in United States v. David, 803 F.2d 1567, 1571 (11th Cir.1986), that under Batson, the striking of a single black juror for a racial reason violates the Equal Protection Clause, even where other black jurors are seated, and even when there are valid reasons for the striking of some black jurors." United States v. Gordon, 817 F.2d 1538, 1541 (11th Cir.1987), vacated in part on another ground, 836 F.2d 1312 (11th Cir.1988). "[E]xplanation of most of the strikes on nonracial grounds does not necessarily rebut the inference created by Batson that peremptory challenges constitute a jury selection practice that permits `those to discriminate who are of a mind to discriminate.'" United States v. David, 803 F.2d at 1571 (quoting Batson, 476 U.S. at 96, 106 S.Ct. at 1723). "[T]he command of Batson is to eliminate, not merely to minimize, racial discrimination in jury selection." Id. As the Batson Court noted, "[`]A single invidiously discriminatory governmental act' is not `immunized by the absence of such discrimination in the making of other comparable decisions.'" 476 U.S. at 95, 106 S.Ct. at 1722 (quoting Arlington Heights v. Metropolitan Housing Development Corp., 429 U.S. 252, 266, n. 14, 97 S.Ct. 555, 564 n. 14, 50 L.Ed.2d 450 (1977)).
*27 Accordingly, this cause is reversed and remanded for a new trial.
REVERSED AND REMANDED.
All Judges concur.
NOTES
[1] The Court further explained, "The standard we adopt under the Federal Constitution is designed to ensure that a State does not use peremptory challenges to strike any black juror because of his race." 476 U.S. at 99, n. 22, 106 S.Ct. at 1724 n. 22.
[2] We further note that we have strong reservations about several other explanations by the prosecutor. However, not only do we find it unnecessary to discuss them, but our review of the prosecutor's explanations has been severely hindered because the record is incomplete. We cannot compare the voir dire proceedings with the explanations given during the hearing on remand; for during the qualification of the venire, the venirepersons were referred to by name, while, during the remand hearing, they were referred to by number, and we have no strike list before us to correspond name with number. Moreover, in his explanations, the prosecutor referred to information outside the record, for example, information from the questionnaires answered by the venirepersons. This information is extraneous to the record and, thus, not supported by it.