Michael Sockwell was convicted of murder made capital by Ala. Code 1975, § 13A-5-40(a)(7), based on the shooting death of Isaiah Harris. After a sentencing hearing, the jury recommended life imprisonment without the possibility of parole; however, the trial court overrode that recommendation and sentenced Sockwell to death by electrocution. The Court of Criminal Appeals affirmed the conviction and sentence. Sockwell v.State, 675 So.2d 4 (Ala.Crim.App. 1993). The Court of Criminal Appeals, in its opinion, provided a detailed description of the facts.
Having carefully reviewed the record, along with the extensive briefs from Sockwell and the State, we conclude that the Court of Criminal Appeals correctly resolved the issues discussed in its opinion. We do, however, find it necessary to examine that court's rationale for its disposition of one of the issues concerning whether the State improperly used its peremptory strikes to remove prospective black jurors from the venire in violation of Batson v. Kentucky, 476 U.S. 79,106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Additionally, we will consider a second Batson issue that Sockwell raised in his appeal before the Court of Criminal Appeals, which that court failed to address. *Page 40 
The venire had 10 black members; the State peremptorily struck 8 of them. Sockwell objected to those strikes, pursuant to Batson. Although the trial court did not make a finding of prima facie discrimination, it nevertheless ordered the prosecutor to give the reasons for her strikes. As she gave her answers regarding each veniremember she had struck, the prosecutor first identified the race and sex of the veniremember as an introduction, then gave the reason or reasons for striking that veniremember. As to E.D., juror number 112, the prosecutor stated:
 "We then struck number 112, who was a black male, according to our records 23 years old. He was extremely vague to the Court's questions about what he had heard. You might remember he said, 'Well, I just heard a little something,' and he kept — well, what did you hear? Where did you hear it? He said, 'Well, in the paper, or something.' The Court then asked him again. He was unclear and then finally he said, 'Well, some people were talking about it. I never really read the paper.' He could not remember what he heard. He said that he could go either way but he was not pro death penalty and personal observations of the attorneys [sic]."
Sockwell's attorney then cross-examined the prosecutor:
"Q. Your reasons again for striking [E.D.]?
"A. You want me to repeat them?
"Q. Yes, ma'am.
 "A. Okay, [E.D.], according to my notes is a black male, approximately 23 years of age, which would put him very close to the same race, sex, and age of the defendant. He had said to the Court he had heard a little something. The Court questioned him further and he finally said, 'Well, I heard it from the paper, or something.' The Court questioned him further. He was very vague and unclear in his answer. The Court asked him more about it and he said, 'Well, some people were talking about it. I didn't actually read it.' He could not remember what had been said nor anything about — anything further about those. His answers to the death penalty did not give me a lot of clues either way as to how he felt. In fact, I think the words he used were 'I could go either way.' "
In reviewing that exchange, the Court of Criminal Appeals wrote, "The prosecutor stated that in addition to the fact that he was the same age and gender as the appellant and his vague responses in regard to pretrial publicity, E.D.'s race was partof the reason for striking him." 675 So.2d at 20, (emphasis added). The Court of Criminal Appeals then held that, although this "reason" was based on race, the fact that the prosecution articulated another, race-neutral, reason for the strike made the strike acceptable under Batson.
We do not agree with the Court of Criminal Appeals that the prosecutor's opening remark identifying E.D. as a black man was given as a reason for striking him from the venire; on the contrary, given the context of the entire exchange, we conclude that this was merely a descriptive identification of the veniremember based on the prosecutor's notes. When the prosecutor gave the reasons for striking a veniremember, either white or black, she first prefaced her remarks by stating the veniremember's race and sex, as she did with E.D. The onlyreasons the prosecutor gave for striking E.D. were his vagueness and lack of candor in stating what he had already heard about the trial, from what source he has gotten this information, and whether he could be willing to recommend the death penalty.
We emphasize our disagreement with the Court of Criminal Appeals' inference that a peremptory strike may be upheld if it is based only partly on race, that is, if the prosecutor articulates both a racially motivated reason and a race-neutral reason for a strike. We note that the Court of Criminal Appeals had previously addressed this issue in Owens v. State,531 So.2d 22 (Ala.Crim.App. 1987), wherein it reversed a capital murder conviction based on improper peremptory strikes of black veniremembers. The court noted, "Simply because race is incidentally mentioned by the prosecutor in his rendition *Page 41 
of reasons for exercising his strikes as he did does not, as a matter of law, establish purposeful discrimination."Owens, 531 So.2d at 25 (emphasis omitted). There, however, the prosector admitted that race was a "reason" and a "factor" that was considered along with race-neutral reasons for the strike.Owens, 531 So.2d at 24-25. The court held that the strikes were not permissible, because one of the reasons for the strikes was race.
As stated, the Court of Criminal Appeal incorrectly construed the prosecutor's mention of Sockwell's race as areason for the strike, rather than as part of the same predicate of identification that she mentioned for all the veniremembers she had struck, both white and black. It then incorrectly construed Owens as support for the proposition that it is permissible to allow a peremptory strike that is based on both race-neutral and non-race-neutral reasons. We hold thatOwens cannot be read to suggest that a non-race-neutral reason
given for a peremptory strike will "cancel out" a race-based reason; rather, Owens recognizes only that the mere mention
of race, like that made here by the prosecutor as a means of identifying the veniremember, does not necessarily establish that a peremptory strike was based on a racially motivated reason and was the product of purposeful discrimination.
The trial court, which must be given great discretion in determining the context in which race was mentioned, found that the strike was race-neutral. After considering the entire context of the prosecutor's explanation, we find no abuse of this discretion. The Court of Criminal Appeals' disposition of this issue was correct, although its rationale was not.
Sockwell next argues that the reasons given for striking several other black veniremembers were pretextual or were not supported by the record. He challenges the prosecutor's striking of veniremembers P.S., B.E., U.C., and L.H.
The prosecutor stated that she struck P.S. because she felt that P.S. did not understand her questions concerning the death penalty. The prosecutor stated that this impression arose because, she said, P.S. shrugged and vaguely waved her arms when asked about the death penalty. Additionally, P.S. had reported a rape in 1989 and the charge against her alleged assailant had been nol-prossed. The prosecutor stated that she feared P.S. would hold this against the State, and she said she also questioned P.S.'s credibility.
The prosecutor stated that she struck L.H. because she perceived L.H. to be "extremely hesitant" on death penalty questions, because he did not answer when his name was called on the roll call of venirepersons, and because he appeared "extremely weak in the way he responded, his voice and his mannerisms."
The prosecutor stated that she struck B.E., an 81-year-old black man, because he appeared to have a visual impairment and because he stated that he was generally opposed to the death penalty.
The prosecutor stated that she struck U.C. because he had prior criminal convictions and because he stated that he was opposed to the death penalty in general and did not feel that he could recommend it.
Sockwell argues that the reasons for those strikes were pretextual because, he says, white veniremembers with similar characteristics were not struck. He points out that two white veniremembers the prosecutor did not strike had criminal records, just as U.C. did; however, the record reveals that the criminal offenses of one white juror were remote in time and that that juror had returned a verdict for the plaintiff in a civil case, and that the other white juror expressed strong views in favor of the death penalty. These facts establish that the two white jurors exhibited characteristics that were favorable to the prosecution and that could counterbalance the negative characteristic of their criminal records, while U.C. did not exhibit characteristics favorable to the prosecution.
Sockwell also argues that two white veniremembers expressed doubt as to whether they could recommend the death penalty, but were not struck for this reason. The record reveals, however, that those two white veniremembers did not initially hear the *Page 42 
question concerning their views on the death penalty and that when the question was clarified, they both answered that they could impose it.
After carefully reviewing the record as it relates to the prosecutor's peremptory strikes, we must conclude that it does not establish that the prosecutor engaged in disparate treatment in the striking of black persons and the striking of white persons.
We note that Sockwell has raised in this Court issues that either were not before the Court of Criminal Appeals or were not addressed in its opinion. In a capital case, this Court may consider any issue concerning the propriety of the conviction and the death sentence, and we have thoroughly considered each issue Sockwell has raised. We have also independently searched the record for reversible error, considering the applicable law as it relates to the facts of this case, and have found none.
The judgment of the Court of Criminal Appeals is affirmed.
AFFIRMED.
MADDOX, SHORES, HOUSTON, and INGRAM,* JJ., concur.
HOOPER, C.J.,* and KENNEDY and COOK, JJ., dissent.
* Chief Justice Hooper and Justice Ingram did not sit at oral argument of this case. However, Chief Justice Hooper listened to the tape of oral argument on November 16, 1995, and Justice Ingram listened to the tape of oral argument on November 7, 1995.