While I agree with the majority that the appellant's conviction is due to be reversed, I do not subscribe altogether to the majority's analysis of Alabama law relating to peremptory challenges and I respectfully disagree with some of the majority's application of the law to the facts in this case.
I believe that reversal is warranted in this case because the prosecutor's explanation regarding his peremptory strike against veniremember number 23, a black female, revealed that the strike was based expressly on gender stereotypes, evidenced an inherently discriminatory intent, and violated the Equal Protection Clause. "The Equal Protection Clause prohibits discrimination in jury selection on the basis of gender, or on the assumption that an individual will be biased in a particular case for no reason other than the fact that the person happens to be a woman or happens to be a man."J.E.B. v. Alabama, 511 U.S. 127, 114 S.Ct. 1419, 128 L.Ed.2d 89
(1994), extending the principles of Batson v. Kentucky,476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), to gender-based jury strikes. When called on to tender his reasons for striking veniremember number 23, the prosecutor stated:
 "Number twenty-three was a female who was struck. There are some authorities who believe that the fewer women that you have on a rape case, the — as jurors, the better. That lady did not impress me. With her background and education, I expected her to answer more of the questions. She's a registered nurse at Providence Hospital. She should have had much more of the — she wouldn't speak out. She should have had much more."
(R. 83.) (Emphasis added.)
It is apparent from the prosecutor's statements that the prosecutor was not incidentally mentioning, but rather was endorsing, the belief that it was better to have fewer women sitting as jurors on rape cases, and that the prosecutor, by citing this belief, was offering an explanation for his strike against veniremember number 23. The prosecutor's explanation was not "gender-neutral"; indeed, it revealed that the veniremember was struck because of her gender. Because the prosecutor gave the veniremember's gender as a reason for striking her, his explanation was facially invalid, and the trial court should have granted the appellant's Batson motion, in which the appellant alleged that the prosecutor had removed prospective jurors solely on the basis of race and/or gender. The fact that the prosecutor offered additional reasons for striking veniremember number 23 that were gender-neutral did not salvage the strike. For purposes of peremptory challenges, gender-neutral reasons for a peremptory challenge will not "cancel out" gender-based reasons. Ex parte Sockwell,675 So.2d 38, 41 (Ala. 1995), cert. denied, ___ U.S ___, 117 S.Ct. 115,136 L.Ed.2d 67 (1996). The ruling of the trial court denying the appellant's Batson motion was "clearly erroneous."
Because the striking of even one prospective juror on the basis of gender will warrant reversal, I would reverse the trial court's ruling based on the strike of this veniremember alone. This would avoid the necessity of weighing the persuasiveness and credibility of the prosecutor's explanations for the peremptory strikes that the prosecutor exercised against a number of other prospective jurors in this case. In this regard, I respectfully take issue with certain of the statements in the majority opinion concerning the prosecutor's proffered reasons for striking these jurors. I believe that there are points in the majority's analysis relating to this issue where the majority conflates the question of the facial validity (i.e., the race- or gender-neutrality) of the explanations offered by the prosecutor with the question whether those explanations were plausible or were instead merely offered as pretexts for purposeful race or gender discrimination. Although the majority cites the three-step procedure for assessing whether there has been purposeful discrimination in the exercise of peremptory challenges that the United *Page 231 
States Supreme Court set out in Purkett v. Elem, 514 U.S. 765,115 S.Ct. 1769, 131 L.Ed.2d 834 (1995), I do not believe that the majority consistently applies the procedure set out inPurkett. However, because of recent uncertainty that has been introduced as to the controlling standard for assessing Batson
claims in Alabama, it is not surprising that this issue would engender disagreement.
Although the majority maintains that the Alabama Supreme Court has provided the courts, prosecutors, and defense counsel of this state with clear guidance as to the law controlling Alabama's peremptory challenge procedure, I am afraid that the majority finds clarity where little exists. The majority appears to suggest that the Alabama Supreme Court currently and unequivocally recognizes the United States Supreme Court's decision in Purkett as controlling authority on Batson claims in this state. However, as of late, five members of the Alabama Supreme Court, denying certiorari review in Ex parte Bruner,681 So.2d 173 (Ala. 1996), concurred in endorsing the comment that Purkett and another lodestar decision of the United States Supreme Court addressing Batson matters, Hernandez v. NewYork, 500 U.S. 352, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991), should not be relied on as controlling authority for peremptory challenges in this state because, it was said, Alabama's peremptory challenge procedure "is based on adequate and independent state law." Bruner, 681 So.2d 173 (a per curiam opinion, with Justices Shores, Kennedy, Ingram, and Butts concurring and Justice Cook concurring specially). Justice Cook wrote separately to state that Alabama's peremptory challenge procedure has never been controlled by the decisions of the United States Supreme Court and that Batson itself is not controlling authority in this state. Justice Maddox, who along with three other Justices concurred in the result only, wrote to express sharp disagreement with this proposition and argued vigorously that Batson and the decisions of the United States Supreme Court construing Batson, including Hernandez
and Purkett, control, and have always controlled, peremptory challenges in this state.
As far as I have been able to determine, Bruner contains the first statement by the Alabama Supreme Court to the effect that peremptory challenges in this state are not controlled by decisions of the United States Supreme Court. The AlabamaReporter is filled with opinions by this state's appellate courts, including the Alabama Supreme Court, that appear to rely on Batson in assessing claims concerning peremptory challenges. Hernandez has been repeatedly cited by this court and the Alabama Supreme Court as authority for addressingBatson claims. As of this date, none of the opinions of this court released before Bruner and relying on Purkett have been criticized by the Alabama Supreme Court for their reliance onPurkett. In a dissent from an opinion of the Alabama Supreme Court issued several months before Bruner, one Justice, who later concurred in Bruner with the comment that Purkett andHernandez should not be relied on as controlling authority for issues concerning peremptory challenges in this state, expressly applied Purkett to a peremptory challenge issue in a capital case and argued that in exercising a particular strike the state had violated the principles of Batson and its progeny. See Ex parte Sockwell, 675 So.2d 38. Joining in this dissent was the same Alabama Supreme Court Justice who wrote inBruner that this state's peremptory challenge procedure has never been controlled by the decisions of the United States Supreme Court. Since Bruner, the Alabama Supreme Court has not released an opinion in which the majority rely on the comment endorsed by the five concurring Justices in Bruner.
In the wake of Bruner, this court has become wary of making definitive statements regarding the law controlling peremptory challenges in this state. In view of the uncertainty that I perceive to surround this issue, I would ask the Alabama Supreme Court to revisit the issue addressed in Bruner. Because I agree with the reasoning set out in Justice Maddox's special writing in Bruner, I would hope that a majority of the Supreme Court will adopt Justice Maddox's writing in that case as a statement of the law *Page 232 
controlling peremptory challenges in Alabama.