[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 544 
The appellant, Curtis Harris, Jr., was convicted of robbery in the first degree, a violation of § 13A-8-41, Ala. Code. 1975, in a robbery involving a convenience store. After application of the enhancement provisions of § 13A-5-6(a)(4), he was sentenced to 20 years' imprisonment.
 I.
The appellant contends that the trial court erred in refusing to require the state to disclose the identity of a confidential informant who initially identified the appellant as the offender depicted on the videotape of the convenience store robbery.
As a general rule, the state has the privilege of not producing the name of an informant if the informant is not an active participant in the illegal transaction that led to the charges against the accused. Sanders v. State, 629 So.2d 715
(Ala.Cr.App. 1993); Self v. State, 420 So.2d 798, 800 (Ala. 1982). *Page 545 
See Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623,1 L.Ed.2d 639 (1957). This privilege is subject to a balancing test, which weighs the defendant's need for disclosure against the public's interest in preserving the informant's anonymity.Roviaro, 353 U.S. at 59-62, 77 S.Ct. at 627-28. "[D]isclosure of the identity of an informant cannot be required where the legality [of the arrest] is established by evidence apart from the informer's communication." Pugh v. State, 493 So.2d 388,391 (Ala.Cr.App. 1985), aff'd, 493 So.2d 393 (Ala. 1986), quoting 76 A.L.R.2d 262, 331 (1961).
The informant who identified the appellant was not a material witness, but was merely someone asked by police to view the videotape to determine if he recognized the offender. When the informant saw the videotape, he was able to identify the offender by his street name. The appellant was not arrested at that time. Instead, the investigating officer showed the videotape to another police officer, Officer Dexter Elliott, who had had previous contact with the appellant and who was able to positively identify the offender on the videotape as the appellant. Next, the robbery victim identified the appellant from a photographic lineup. Finally, the appellant gave an incriminating statement during an interview by police. At that point, the appellant was arrested.
Because the appellant has not asserted any defense that he could have used had he known the identity of the informant and because the informant was essentially an identification witness, was not a participant in the crime, and did not provide probable cause for the arrest, we find that the trial court did not err in allowing the state to withhold the informant's identity. See Harrell v. State, 555 So.2d 257
(Ala.Cr.App.), aff'd, 555 So.2d 263 (Ala. 1989).
 II.
The appellant contends that the state used its peremptory challenges against prospective jurors in a racially discriminatory manner in violation of Batson v. Kentucky,476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Specifically, the appellant argues that the state improperly used one of its peremptory strikes to remove one of two black females from the jury venire.
After the appellant's Batson objection, the trial court did not expressly find that a prima facie case of discrimination had been made, but simply requested that the state give reasons for its peremptory strike. Without objecting, the state offered explanations for its strike.
We note that, initially, the party alleging the discriminatory use of peremptory challenges bears the burden of establishing a prima facie case of discrimination. Ex parteBranch, 526 So.2d 609, 622 (Ala. 1987). Once a prima facie case has been established, a presumption is created that the peremptory challenges were used to discriminate against black jurors. Ex parte Branch, 526 So.2d at 623. Where, as in this case, the trial court requires the opposing counsel to state reasons for the peremptory strikes without first requiring that a prima facie case of discrimination be established, this Court will review those reasons and the trial court's ultimate decision on the Batson motion without determining whether the moving party met its burden of proving a prima facie case of discrimination. McLeod v. State, 581 So.2d 1144 (Ala.Cr.App. 1990). When the trial court has required a party to state reasons, that party must articulate a clear, specific, and legitimate reason for the challenge that relates to the particular case to be tried and that is nondiscriminatory. Exparte Bird, 594 So.2d 676, 679 (Ala. 1991), citing Batson,476 U.S. at 97, 106 S.Ct. at 1723. Once the responding party has articulated a race-neutral reason or explanation for eliminating the black jurors, the moving party can offer evidence showing that the reason or explanation was merely a sham or pretext. Ex parte Branch, 526 So.2d at 624. When the trial court has followed this procedure, its determination will be overturned only if that determination is clearly erroneous.Ex parte Branch, 526 So.2d at 625.
Accordingly, we will review the relevant portions of the record to determine whether the trial court's determination was clearly erroneous. *Page 546 
The appellant was accused of robbing a convenience store by striking the cashier in the head with a bottle, reaching into the cash register, and taking $65 after the cashier moved away from the register. The prosecutor stated that he exercised a peremptory challenge against the juror in question because she had worked as a cashier. The prosecutor further explained that he had struck all cashiers or former cashiers on the venire because he believed "they would hold the victim to a higher standard and believe what [she] did in response and her actions were not appropriate as a cashier." (R. 123-25.)
Where the prosecutor is required to explain a peremptory strike, he or she must offer " 'a clear, specific, and legitimate reason for the challenge which relates to theparticular case to be tried, and which is nondiscriminatory.Batson, 476 U.S. at 97, 106 S.Ct. at 1723. However, this showing need not rise to the level of a challenge for cause.' "McLeod, 581 So.2d at 1155, quoting Ex parte Branch, 526 So.2d at 623.
In this case, the prosecutor articulated a race-neutral reason for striking the black female juror. The record indicates that the prosecutor struck a white juror for substantially the same reason. Evidence of similar treatment overcomes the presumption of discrimination. Weaver v. State,678 So.2d 260, 272 (Ala.Cr.App. 1995), rev'd on other grounds,678 So.2d 284 (Ala. 1996). Once a race-neutral explanation for the strike was given, the burden then shifted to the appellant to offer evidence showing that the reasons or explanations were merely shams or pretextual. The appellant offered no such evidence. (R. 125.) The trial court's decision was not clearly erroneous.
 III.
The appellant contends that the trial court erred in denying his motion to suppress the statement he made to the police because, he says, it was not given knowingly, voluntarily, and intelligently.
 "In determining whether a confession is voluntary, the trial court's finding of voluntariness need only be supported by a preponderance of the evidence. Seawright v. State, 479 So.2d 1362, 1367 (Ala.Cr.App. 1985). The trial court's decision will not be disturbed on appeal unless it is manifestly contrary to the great weight of the evidence. ' "The test for the voluntary nature of an extrajudicial confession or inculpatory statement is whether in light of all the surrounding circumstances, the statement was free from inducement, threat or promise, either expressed or implied, which would have produced in the mind of the accused any fear of harm or hope of favor." ' Seawright, 479 So.2d at 1367, citing Rogers v. State, 365 So.2d 322 (Ala.Cr.App.), cert. denied, 365 So.2d 334 (Ala. 1978)."
Dixon v. State, 588 So.2d 903, 907 (Ala. 1991), cert. denied502 U.S. 1044, 112 S.Ct. 904, 116 L.Ed.2d 805 (1992).
Whether a waiver of Miranda rights is knowingly and intelligently made depends on the facts of each case, considering the totality of the circumstances surrounding the interrogation, including the characteristics of the accused, the conditions of the interrogation, and the conduct of the law enforcement officials. Staten v. State, 547 So.2d 603
(Ala.Cr.App. 1988), rev'd on other grounds, 547 So.2d 607 (Ala. 1989); Moore v. State, 415 So.2d 1210 (Ala.Cr.App. 1982), cert. denied, 459 U.S. 1041, 103 S.Ct. 459, 74 L.Ed.2d 610 (1982). The question whether a confession is knowing and voluntary is a question of law for the trial court, and the trial court's finding on that issue will not be reversed on appeal unless it is contrary to the great weight of the evidence or is manifestly wrong. Staten; Hubbard v. State, 500 So.2d 1204
(Ala.Cr.App.), aff'd, 500 So.2d 1231 (Ala. 1986), cert. denied,480 U.S. 940, 107 S.Ct. 1591, 94 L.Ed.2d 780 (1987).
The appellant's contention that he was coerced by the police to confess and that he did not fully understand the situation because he was not sober at the time of interrogation is unpersuasive. The record establishes the voluntariness of his statement. His Miranda warnings were thoroughly covered, and he signed a waiver of rights form. Officer Gary Walker testified that no promise or threat was made to obtain *Page 547 
the appellant's statement. He further stated that the appellant did not appear to be under the influence of alcohol or any other substance during questioning and that the appellant had been playing basketball with a group of young men when he agreed to come to the police station.
The trial court found as follows:
 "The evidence that has been offered in these hearings, while in conflict in some regards, it appears from the totality of it that Mr. Harris — he claims to have been under the influence of drugs; however, the evidence is uncontradicted that he was first observed playing basketball, then he was taken down to the police station. He remembers from his own testimony here seeing the victim in the hall and has no problem recalling those incidents. . . . The court concludes that given the totality of the confession, the circumstances that he was advised of his rights, that he freely and voluntarily, — knowingly and voluntarily and intelligently made the decision to sign the rights waiver and there gave his statement [confession] to the investigating officers. And it appears that under the totality of the circumstances he waived his rights to remain silent."
(R. 304-06.) We do not find the trial court's ruling to be contrary to the great weight of the evidence or manifestly wrong. The appellant's statement was properly admitted into evidence.
 IV.
The appellant contends that the police photographic lineup from which the robbery victim and identified the appellant as the offender was impermissibly suggestive. The appellant did not preserve this issue for appellate review.
The appellant objected to the photographic lineup as follows:
 "THE COURT: Let me ask you a question first. Your objection to the photo lineup is what?
 "[Appellant's attorney]: That it was a product of an illegal arrest and was coerced and the rights waiver was —
"THE COURT: Okay. All right."
(R. 303-04.) The appellant did not argue below that the photographic lineup was impermissibly suggestive. The statement of the specific ground of an objection waives any grounds not specified. Smith v. State, 677 So.2d 1240, 1249 (Ala.Cr.App. 1995).
Furthermore, even had the issue been preserved, we find no merit to the appellant's claim. In Carroll v. State,639 So.2d 574, 576 (Ala.Cr.App. 1993), we stated:
 " 'Pre-trial identifications are to be set aside on grounds of prejudice only if the pre-trial identification procedure is so impermissibly suggestive as to give rise to a substantial likelihood of misidentification. Scott v. State, 479 So.2d 1343 (Ala.Cr.App. 1985). The totality of the circumstances surrounding the out-of-court identification need be analyzed only when the pretrial procedures used were unnecessarily or impermissibly suggestive. Coleman v. State, 487 So.2d 1380 (Ala.Cr.App. 1986). The fact that witnesses are shown photographs does not establish suggestiveness. Matthews v. State, 401 So.2d 241
(Ala.Cr.App. 1981), cert. denied, 401 So.2d 248
(Ala. 1981).' Ex parte Stout, 547 So.2d 901, 904
(Ala. 1989)."
A review of the record shows that the photographic lineup used for the out-of-court identification was not unduly suggestive. The victim was not told that the appellant's photograph was in the lineup; she was merely asked to look at the photographs and to determine whether she recognized anyone. The victim identified the appellant from the photographs without hesitation, and she testified at trial that she was certain that the appellant was the offender.
Furthermore, the victim testified that her in-court identification was independent of the pretrial identification and that it was based solely on her recollection of the robbery. The victim stated that she looked the appellant in the eyes several times during the course of the robbery and that she was certain the appellant was the robber. "When an in-court identification of the accused is shown to have a basis independent of any pretrial identification, then it is properly admitted into evidence." Clements v. *Page 548 State, 521 So.2d 1378, 1382 (Ala.Cr.App. 1988).
The out-of-court identification of the appellant was not unduly suggestive, and the in-court identification had a basis independent of the pretrial identification.
 V.
The appellant contends that his sentence was improperly enhanced under § 13A-5-6(a)(4), Ala. Code. 1975, when the trial court determined that the 16-ounce glass soft drink bottle with which he struck the victim with a deadly weapon. Section13A-5-6(a)(4) provides for sentencing as follows:
 "For a Class A felony in which a firearm or deadly weapon was used or attempted to be used in the commission of the felony, not less than 20 years."
"Deadly weapon" is defined at § 13A-1-2(11), Ala. Code. 1975, as:
 "A firearm or anything manifestly designed, made or adapted for the purposes of inflicting death or serious physical injury, and such term includes, but is not limited to, a pistol, rifle or shotgun; or a switch-blade knife, gravity knife, stiletto, sword or dagger; any billy, black-jack, bludgeon or metal knuckles."
To assist us in determining whether a glass soft drink bottle may be classified as a "deadly weapon" for purposes of applying § 13A-5-6(a)(4), we look to the Alabama Supreme Court, which recently stated in Ex parte Cobb, 703 So.2d 871, 876 (Ala. 1996), that "the legislature intended to include as deadly weapons only things that are similar to the listed weapons. Only [inanimate] objects that are 'designed, made or adapted for the purposes of inflicting death or serious physical injury' fit the definition of 'deadly weapon.' " The issue inCobb was whether a person's fists could be considered a deadly weapon.
Although a glass bottle is not specifically included in the list of weapons defined as "deadly weapons," a bottle may be "adapted for the purposes of inflicting death or serious physical injury," and may therefore be a "deadly weapon." InCooper v. State, 584 So.2d 920, 921 (Ala.Cr.App. 1991), we affirmed a sentence for first degree robbery enhanced pursuant to § 13A-5-6(a)(4), where the appellant used a broken bottle as a dangerous weapon. See also Christian v. State, 351 So.2d 616, (Ala.Cr.App. 1976), rev'd on other grounds, 351 So.2d 623 (Ala. 1977). Clearly, a bottle may be adapted and used as a deadly weapon.
The record indicates that the appellant used the glass soft drink bottle to strike the victim on the head and in a manner unrelated to its innocent and useful purpose. The bottle was full of liquid and therefore had some weight, and was obviously hard. The bottle was capable of causing serious injury either broken or unbroken. As a result of the blow, the victim suffered a cut, bled profusely, and required an undetermined number of stitches. Although the appellant was fortunate that the force of his blow to the victim's head did not cause death or permanent serious physical injury, the possibility of death or serious physical injury was present, given the size and weight of the bottle, the location of the blow, and the other circumstances that were proven. The manner in which the appellant used the bottle was sufficiently similar to the manner in which one would use a billy club or bludgeon to qualify as a deadly weapon for purposes of the application of § 13A-5-6(a)(4). The trial court correctly determined that the glass soft drink bottle was a deadly weapon.
 VI.
The appellant contends that the trial court erred by denying his motion for a judgment of acquittal on the ground that the state had failed to prove a prima facie case of robbery in the first degree.
Section 13A-8-41(a)(1), Ala. Code. 1975, provides that "[a] person commits the crime of robbery in the first degree if he violates § 13A-8-43 and he . . . [i]s armed with a deadly weapon or dangerous instrument." Section 13A-8-43, Ala. Code. 1975, provides:
 "(a) A person commits the crime of robbery in the third degree if in the course of committing a theft he:
 "(1) Uses force against the person of the owner or any person present with *Page 549 
the intent to overcome his physical resistance or physical power of resistance; or
 "(2) Threatens the imminent use of force against the person of the owner or any person present with intent to compel acquiescence to the taking of or escaping with the property."
The evidence here, viewed most favorably to the state, showed that on January 4, 1993, the appellant entered the store where the victim was working and walked to the drink cooler. He then removed a glass 16-ounce soft drink bottle and approached the victim at the counter, where he used the bottle as a weapon to hit the victim in the head. The victim, after she was hit, moved away from the counter. The appellant then reached into the cash register and removed $65. The victim identified the appellant from a photographic lineup, as well as in court. A videotape of the offense and a signed confession by the appellant were also admitted into evidence.
Based on our review of the record, we find that sufficient evidence was presented by the state to submit the case to a jury on the charge of robbery. See Watkins v. State,565 So.2d 1227, 1231 (Ala.Cr.App. 1990) (holding that the testimony of the victim alone is sufficient to establish a prima facie case of robbery in the first degree). Where the evidence presented raises questions of fact for the jury, which, if believed, would be sufficient to sustain a conviction, this court has no right to disturb the verdict of the jury. Walker v. State,416 So.2d 1083 (Ala.Cr.App. 1982); Haggler v. State, 49 Ala. App. 259, 270 So.2d 690 (1972). Absent clear and convincing evidence to the contrary, we will not reverse a jury's determination on appeal. Hoobler v. State, 668 So.2d 905 (Ala.Cr.App. 1995). This case does not present such a situation.
 VII.
The appellant contends that he was denied his right to a speedy trial. Specifically, he contends that because his trial was conducted approximately three years after his arrest, he was not able to use witnesses who might otherwise have been able to recall events and facts exculpatory to him. This issue is presented for the first time on appellate review. From a review of the record it appears that the allegation of the denial of a speedy trial was never presented to the trial court. The appellant never requested that the indictment be dismissed on the basis that he was denied a speedy trial. Because the appellant did not assert this right and make the trial judge aware of any prejudice he allegedly suffered, this issue is not preserved for appeal. See Welborn v. State,580 So.2d 1, 3 (Ala.Cr.App. 1989). "[E]ven constitutional issues must first be raised at the trial level or they are deemed waived." Smith v. State, 518 So.2d 174 (Ala.Cr.App. 1987);Taylor v. State, 491 So.2d 1042 (Ala.Cr.App. 1986).
Based on the foregoing, the judgment of the trial court is affirmed.
AFFIRMED.
All the Judges concur.