The appellant, Roderick Lee Armstrong, was indicted for robbery in the first degree, was found guilty as charged, and was sentenced to 22 years' imprisonment.
 I.
The appellant contends that the trial court committed reversible error by denying him a Batson hearing to determine whether the prosecutor used his peremptory challenges in a racially discriminatory manner. The United States Supreme Court, in Batson v. Kentucky, 476 U.S. 79, 89, 106 S.Ct. 1712,1719, 90 L.Ed.2d 69 (1986), held that the State's use of peremptory strikes is subject to the Equal Protection Clause of the Fourteenth Amendment. Although the appellant's counsel asserts "that the state could not prove a prima facie case for non-racial reasons for its strikes," Batson clearly places the initial burden of establishing a prima facie case of discrimination upon the party challenging the strikes.476 U.S. at 93-94, 106 S.Ct. at 1721-22, 90 L.Ed.2d at 85; see alsoSockwell v. State, 675 So.2d 4, 18 (Ala.Cr.App. 1993), aff'd,675 So.2d 38 (1995), cert. denied, ___ U.S. ___, 117 S.Ct. 115,136 L.Ed.2d 67 (1996). Only after the challenging party has established a prima facie case does the burden shift to the other party to state neutral reasons for each strike. Batson,476 U.S. at 95, 106 S.Ct. at 1722, 90 L.Ed.2d at 86. Furthermore, Batson set forth what the moving party must prove to make a prima facie showing:
 "To establish such a case, the defendant must first show that he is a member of a cognizable racial group. Castaneda v. Partida, supra, [430 U.S. 482] at 494 [97 S.Ct. 1272 at 1280, 51 L.Ed.2d 498 (1977)], and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race.[1] Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits 'those to discriminate who are a mind to discriminate.' Avery v. Georgia, 345 U.S. [559], at 562 [73 S.Ct. 891, at 892, 97 L.Ed. 1244
(1953)]. Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race. This combination of factors in the empaneling of the petit jury, as in the selection of the venire, raises the necessary inference of purposeful discrimination."
476 U.S. at 96, 106 S.Ct. at 1723, 90 L.Ed.2d at 87.
The appellant argues that the trial court's finding that he had not established prima facie case was improper because, he says, it was based upon a "statistical analysis of the jury venire and the make-up of the jury." In Ex parte Thomas,659 So.2d 3 (Ala. 1994), the Alabama Supreme Court held that the fact that a greater percentage of blacks ultimately sat on the jury than were on the venire alone could not defeat a prima facie case showing of discrimination. Therefore, we must conclude that the trial judge in this case erred if she determined that no prima facie case had been established based merely on a comparison of the percentage of blacks sitting on the jury to the percentage of blacks on the venire.
The record, however, does not show that the judge made such a statistical analysis or that the trial judge placed undue weight on any such analysis. The only indications this Court has that such an analysis was made are the appellant's representations on appeal that those portions of the record relating to the analysis are "inexplicably missing" and that "trial counsel was under the assumption that the court reporter was indeed recording this dialogue." The appellant's proper remedy given such circumstances was to file with the trial court a motion to supplement the record under Rule *Page 533 
10(g), Ala.R.App.P.[2] Absent such a motion, the record is silent regarding any analysis of the racial makeup of the jury and the venire. This Court, therefore, has no basis on which to determine whether the trial judge violated the holding of Exparte Thomas, supra.
The only evidence in the record regarding the prosecutor's use of his strikes is the mere statement that he used seven of his eight strikes to excuse black members of the venire. Whether a prima facie case of discrimination can be based solely upon the fact that the prosecutor used an inordinate number of strikes against one race is unclear. Batson states "[A] 'pattern' of strikes against black jurors included in a particular venire might give rise to an inference of discrimination." Batson, 476 U.S. at 97, 106 S.Ct. at 1723,90 L.Ed.2d at 88. However, Batson did not define "pattern" and did not explain whether a pattern can be ascertained solely from examining the number of strikes or the percentage of the total strikes used by a party against a certain race. Furthermore, even if a pattern can be discerned from bare statistics, the question what percentage is required before a prima facie case has been shown remains.
In Ex parte Thomas, 659 So.2d at 8, the Supreme Court of Alabama stated:
 "The prosecutor here used 9 of his 10 strikes to strike blacks from the venire. By objecting to this pattern of striking blacks from the venire, Thomas made a prima facie showing of a Batson violation."
This language indicates that a high percentage of strikes against a certain race could, alone, indicate a pattern of discrimination, which would not only allow for the finding of a prima facie case of discrimination, but would actually mandate that the trial judge make such a finding.
A reliance on numbers alone, however, has been renounced by trial judges, who, unlike appellate courts, are able to observe the circumstances surrounding the strikes. Their frustration is reflected in the comments of Judge Charles Price, the trial judge in Bui v. State, 627 So.2d 855 (Ala. 1992), who referred to basing a prima facie finding merely upon the fact that 8 out of 10 black veniremembers had been struck as playing a "numbers game." Id. at 857. Judge Price's comments are compelling because he is a respected black judge who, in his own words, has "been very, very observant of prosecutors' actions in striking black people and minorities from juries." Id. at 856.
Alabama courts have recently held that even a showing that party had struck a high percentage of strikes used against a minority was not alone enough. In Ex parte Trawick,698 So.2d 162, 168 (Ala. 1997), the Alabama Supreme Court held, "Without more, we do not find that the number of strikes this prosecutor used to remove women from the venire is sufficient to establish a prima facie case of gender discrimination." The Court citedEx parte Branch, 526 So.2d 609 (Ala. 1987), in which the Court listed nine relevant factors a trial judge could consider when determining whether a prima facie case of discrimination had been shown:
 "1. Evidence that the 'jurors in question share[d] only this one characteristic — their membership in the group — and that in all other respects they [were] as heterogenous as the community as a whole.' [People v.] Wheeler, 22 Cal. 3d [258,] at 280, 583 P.2d [748,] at 764, 148 Cal.Rptr. [890,] at 905 (1978). For instance 'it may be significant that the persons challenged, although all black, include both men and women and are a variety of ages, occupations, and social and economic conditions,' Wheeler, 22 Cal.3d at 280, 583 P.2d at 764, n. 27, 148 Cal.Rptr. at 905, n. 27, indicating that race was the deciding factor.
 "2. A pattern of strikes against black jurors on the particular venire; e.g., 4 of 6 peremptory challenges were used to strike black jurors. Batson, 476 U.S. at 97, 106 S.Ct. at 1723.
 "3. The past conduct of the state's attorney in using peremptory challenges to *Page 534 
strike all blacks from the jury venire. Swain [v. Alabama], 380 U.S. 202 [85 S.Ct. 824, 13 L.Ed.2d 759 (1965)].
 "4. The type and manner of the state's attorney's questions and statements during voir dire, including nothing more than desultory voir dire. Batson, 476 U.S. at 97, 106 S.Ct. at 1723; Wheeler, 22 Cal.3d at 281, 583 P.2d at 764, 148 Cal.Rptr. at 905.
 "5. The type and manner of questions directed to the challenged juror, including a lack of questions, or a lack of meaningful questions. Slappy v. State, 503 So.2d 350, 355 (Fla. Dist. Ct. App. 1987); People v. Turner, 42 Cal.3d 711, 726 P.2d 102, 230 Cal.Rptr. 656 (1986); People v. Wheeler, 22 Cal.3d 258, 583 P.2d 748, 764, 148 Cal.Rptr. 890, 905-06 (1978).
 "6. Disparate treatment of members of the jury venire with the same characteristics, or who answer a question in the same or similar manner; e.g., in Slappy, a black elementary school teacher was struck as being potentially too liberal because of his job, but a white elementary school teacher was not challenged. Slappy, 504[503] So.2d at 352 and 355.
 "7. Disparate examination of members of the venire; e.g., in Slappy, a question designed to provoke a certain response that is likely to disqualify a juror was asked to black jurors, but not to white jurors. Slappy, 503 So.2d at 355.
 "8. Circumstantial evidence of intent may be proven by disparate impact where all or most of the challenges were used to strike blacks from the jury. Batson, 476 U.S. at 93, 106 S.Ct. at 1721; Washington v. Davis, 426 U.S. [229,] at 242, 96 S.Ct. [2040,] at 2049 [48 L.Ed.2d 597 (1976)].
 "9. The state used peremptory challenges to dismiss all or most black jurors. See Slappy, 503 So.2d at 354, Turner, supra."
Although factors 2 and 8 both appear to apply to the statistics used by the appellant in the present case, Ex parteTrawick stands for the proposition that, while such statistical evidence can play a role in establishing a prima facie case, that type of evidence alone cannot support a prima facie case; the other factors listed in Branch should also be considered. The prosecutor in Ex parte Trawick had used 11 of his 14 strikes to remove women from the jury. However, the Court noted that Trawick had failed to show that any of the other factors listed in Ex parte Branch was present and further noted that the percentage of strikes used to strike women, without more, was not sufficient to establish a prima facie case. Ex parteTrawick, 698 So.2d 162, 168 (Ala. 1997).
Thus, the reliance in Ex parte Trawick on more than one factor is consistent with the United States Supreme Court's interpretation of the burden in equal protection cases and with the deference owed to trial judges. The Supreme Court has consistently held that the moving party must show that the challenged party acted with discriminatory intent, a burden that requires more than a showing that the strikes in question had a disparate impact upon a certain group. Village ofArlington Heights v. Metropolitan Housing Development Corp.,429 U.S. 252, 264-65, 97 S.Ct. 555, 563, 50 L.Ed.2d 450 (1977);Washington v. Davis, 426 U.S. 229, 239, 96 S.Ct. 2040, 2047,48 L.Ed.2d 597 (1976). The Supreme Court stated this principle inHernandez v. New York, 500 U.S. 352, 365, 111 S.Ct. 1859, 1869,114 L.Ed.2d 395 (1991), to describe the showing of intent to discriminate in a Batson challenge as "a pure issue of fact, subject to review under a deferential standard." This Court has recognized that deference should be paid to the trial judge when considering whether a prima facie case of discrimination has been shown:
 "A trial court's decision with regard to a Batson motion is to be reversed only if the decision is clearly erroneous. [Ex parte] Branch, 526 So.2d [609] at 625; Jackson v. State, 594 So.2d 1289 [, 1294] (Ala.Crim.App. 1991)."
Sockwell v. State, 675 So.2d 4, 18 (Ala.Cr.App. 1993).
According to the record, the appellant in this case relied solely upon the fact that seven of the eight veniremembers struck by the prosecutor were black. According to the Alabama Supreme Court in Ex parte Trawick as well as the United States Supreme *Page 535 
Court's interpretation of the burden in equal protection cases, these bare statistics were not sufficient to make a prima facie showing of discrimination. Therefore, the trial judge's denial of the appellant's motion to quash the jury venire is due to be affirmed.
 II.
The appellant contends that the trial judge erred by denying his motion for judgment of acquittal because, he says, there was insufficient evidence to support his conviction.
Evidence at trial tended to show that, on October 13, 1994, the victim drove her 1986 Oldsmobile 98 automobile to her parents' house. As she went up the steps to the house, she was confronted by the appellant who pointed a gun at her head and threatened to "blow [her] fucking head off," if she did not give him the keys to her car. The appellant took the keys from the victim's hand and fled in her automobile. The victim immediately reported the offense to the Bessemer Police Department, describing for Officer Johnny R. Lindgen the appellant and the automobile he had taken. Five days later, Officer Archie Arrington noticed the appellant driving an Oldsmobile that matched the description of the car given by the victim. After waiting for the appellant to park, Officer Arrington arrested him. The appellant struggled and attempted to flee but was eventually taken into custody. Officer Arrington verified from the tag number that the car was the one that had been taken in the robbery. The next day the victim picked the appellant out of a photographic lineup.
The appellant testified that he had been playing cards with several friends when the robbery allegedly occurred. This testimony was corroborated by two other witnesses. According to the appellant, the car he was driving when Officer Arrington arrested him had been loaned to him by a friend named "Eric." He said he had switched cars when he picked up a friend's car at a repair the shop in Birmingham and that he then drove it back to Bessemer, not knowing that it was stolen. He testified that he did not tell the police about Eric because he knew that Eric had moved "up-state" and they would be unable to locate him.
According to this Court in Gayle v. State, 616 So.2d 378, 380
(Ala.Cr.App. 1993), when determining whether there is sufficient evidence to support a conviction, a reviewing court must "view the evidence in the light most favorable to the state" and cannot substitute its own judgment for the jury's. In this case there was overwhelming evidence from which a jury could find beyond a reasonable doubt that the appellant committed the robbery on October 13, 1994; including the testimony of the victim, the fact that she picked the appellant out of a photographic lineup, and Officer Arrington's testimony. Although witnesses testified that the appellant was somewhere else at the time, this Court is not entitled to encroach upon the jury's role as the weigher of the witnesses' credibility.Lawrence v. State, 443 So.2d 1351, 1353 (Ala.Cr.App. 1983).
AFFIRMED.
All judges concur.
[1] The requirement that the defendant be of the same race as the struck veniremembers was abrogated in Powers v. Ohio,499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991).
[2] See Boyd v. State, 542 So.2d 1247, 1258 (Ala.Cr.App. 1988), aff'd, 542 So.2d 1276 (1989), cert. denied, 493 U.S. 883,110 S.Ct. 219, 107 L.Ed.2d 172 (1989). Although Boyd discusses Rule 10(f), Ala.R.App.P., as the rule concerning a motion to supplement the record, the discussion is relevant; Rule 10(f) was the predecessor rule to Rule 10(g), Ala.R.App.P.