The appellant, Phillip Lucy, was convicted of murder, a violation of § 13A-6-2(a)(1), Ala. Code 1975. The trial court sentenced him, as a habitual offender, to serve 25 years in prison. See § 13A-5-9(a)(3), Ala. Code 1975. The appellant filed a motion for a new trial, which the trial court denied after conducting a hearing. This appeal followed.
The appellant argues that the trial court erroneously denied his motion pursuant to Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712,90 L.Ed.2d 69 (1986), because the prosecutor allegedly did not articulate race-neutral reasons for his use of each of his peremptory challenges. Before the jury was sworn, the following occurred:
 "[DEFENSE COUNSEL]: At this point, Your Honor, the defense would make a motion under Batson v. Kentucky
and its progeny, and, of course, Branch v. State, [526 So.2d 609 (Ala. 1987)] regarding the discriminatory striking pattern of the district attorney's office. For the record, the defendant in this case is white. However, it is clear that from the guaranties of Batson and its progeny it extends to any criminal case no matter what the race the individual defendant may be.
 "In the case at bar, Your Honor, we have just struck a jury from a total venire of 45 persons. Of that number, 31 were African-American, which is approximately a ratio — which I don't have to do the math, but that is 70 plus percent. The strikes, the defense had a total of 16 strikes, the last one being an alternate. The State had a total of 17 strikes, the last one being an alternate. The defense had a total of 16 strikes, the last one being an alternate. The State of Alabama has just used one hundred percent of its peremptory strikes to strike African-Americans. Many of the African-Americans who were struck by the State had no significant response to voir dire, including the lengthy, some of which had no response to the lengthy voir dire regarding exposure to pretrial publicity in this case.
 "In particular, those would be [V.G.], who is going to be State's strike number three. That's juror number 20.
 "THE COURT: Are you just challenging these individuals, or are you challenging the entire —
 "[DEFENSE COUNSEL]: I'm challenging the entire strike because they have used one hundred percent of their strikes to strike African-Americans and include in those number of people who had very few, if any, responses to the voir dire in this case.
". . . .
 "THE COURT: . . . Is that your basis of the, just merely the numbers?
 "[DEFENSE COUNSEL]: It certainly is, Your Honor, when the number is one hundred percent.
 "THE COURT: Does the State want to proceed with the justification on each strike, please?"
(R. 249-51.) Thereafter, the prosecutor explained his reasons for each of his peremptory challenges.
 "In Batson, the United States Supreme Court held that the prosecution violates equal protection when it peremptorily strikes `potential jurors [from the venire] solely on account of their race or on the assumption that black *Page 1176 
jurors as a group will be unable impartially to consider the State's case against a black defendant.' 476 U.S. at 89, 106 S.Ct. at 1719. After the appellant makes a timely Batson motion and establishes a prima facie showing of discrimination, the burden shifts to the state to provide a race-neutral reason for each strike of a minority veniremember. See, e.g., Ex parte Bird, 594 So.2d 676
(Ala. 1991). We will reverse the circuit court's ruling on the Batson motion only if it is `clearly erroneous.' Jackson v. State, 549 So.2d 616
(Ala.Cr.App. 1989)."
Cooper v. State, 611 So.2d 460, 463 (Ala.Crim.App. 1992). In support of its Batson motion, the defense argued that the prosecutor used all of his peremptory challenges to strike black potential jurors.
 "Alabama courts have recently held that even a showing that [a] party had struck a high percentage of strikes used against a minority was not alone enough. In Ex parte Trawick, 698 So.2d 162, 168 (Ala. 1997), the Alabama Supreme Court held, `Without more, we do not find that the number of strikes this prosecutor used to remove women from the venire is sufficient to establish a prima facie case of gender discrimination.'"
Armstrong v. State, 710 So.2d 531, 533 (Ala.Crim.App. 1997). Because the defense relied solely upon the percentage of blacks struck, we question whether it established a prima facie showing that the prosecutor exercised his peremptory challenges in a discriminatory manner. Nevertheless,
 "[w]here, as in this case, the trial court requires the opposing counsel to state reasons for the peremptory strikes without first requiring that a prima facie case of discrimination be established, this Court will review those reasons and the trial court's ultimate decision on the Batson motion without determining whether the moving party met its burden of proving a prima facie case of discrimination."
Harris v. State, 705 So.2d 542, 545 (Ala.Crim.App. 1997).
In this case, the prosecutor stated that he struck potential juror P.E. because her "husband is a pastor" and because he "did not feel like she would be a strong law enforcement State's witness, that she would perhaps tend to be forgiving and forget." (R. 254, 255.) However, during the voir dire proceedings, the trial court asked the potential jurors if they knew of any reason why, if they were selected as jurors, they could not give both the State and the defendant a fair and impartial trial, and potential juror P.E. did not respond. (R. 93.) Subsequently, when the prosecutor asked if any of the potential jurors would have a problem returning a guilty verdict for religious reasons, potential juror P.E. again did not respond. (R. 107.) Finally, during individual voir dire questioning, potential juror P.E. indicated that she could follow the trial court's instructions and return a verdict based solely on the evidence presented. (R. 169.)
In Walker v. State, 611 So.2d 1133, 1135-42 (Ala.Crim.App. 1992), we addressed a similar situation as follows:
 "The prosecutor's reason for striking veniremember no. 68 was that he was told by a juvenile probation officer that this veniremember was a preacher's wife and that she was compassionate. Although he considered that, in his experience, ministers and their wives are not good jurors in death penalty cases, he admitted that he did not know whether her husband was for or against capital punishment. . . .
". . . .
 "The prosecutor's reasons for striking veniremember no. 123 was that Investigator Strickland stated that he knew *Page 1177 
him and his father; that they were very religious; and that he thought that this veniremember `just wouldn't go for the death penalty.' . . .
". . . .
 "We . . . find that the reasons for two . . . strikes were not race neutral under the circumstances before us: veniremember no. 68 because she was a minister's wife and veniremember no. 123 because he was `very religious.' These veniremembers did not respond when asked whether they had a fixed opinion against the death penalty or whether they not being absolutely opposed to it, `just [did not] like it,' or when asked whether any veniremember had `a personal, religious or moral conviction against passing judgment on [his] fellow man.' `[A]n explanation based on a group bias where the group trait is not shown to apply to the challenged juror specifically' is evidence that the reason was a sham or pretext. Branch, 526 So.2d at 624 (quoting Slappy v. State, 503 So.2d at 355; noting as an example `an assumption that teachers as a class are too liberal, without any specific questions having been directed to . . . the individual juror showing the potentially liberal nature of the challenged juror'). See also Williams v. State, 548 So.2d 501, 507-08 (Ala.Cr.App. 1988), cert. denied, 489 U.S. 1028, 109 S.Ct. 1159, 103 L.Ed.2d 218 (1989) (wherein the court noted that strikes based on age-based bias, residence-based bias, and employment-based bias, without any voir dire examination in reference to these biases, raise a strong inference of discrimination). `"Group-based" strikes without "examination of [the] juror apparent in the record to determine any further information about the juror and the juror's competency to serve" caused our Supreme Court "great concern."' Parker v. State, 568 So.2d at 337 (quoting Branch, 526 So.2d at 626 n. 13). Here, there is even stronger basis of concern, because in this case voir dire examination revealed that the two veniremembers in question did not possess the group trait assumed by the prosecutor. The prosecutor could have easily dispelled any doubt, had there been any, by asking a follow-up question specifically of each veniremember. He cannot, however, presume that, in the absence of a response to specific voir dire questioning as to whether the veniremember is in fact opposed to the death penalty, the veniremember would not vote in favor of the death penalty simply because the veniremember is very religious, is a minister or minister's wife, or even is a member of a particular denomination. `We recognize that in many cases, both criminal and civil, lawyers frequently engage in "stereotyping" when exercising their peremptory strikes. Batson and [Ex parte] Jackson [, 516 So.2d 768 (Ala. 1986),] severely limit "stereotyping" in particular criminal cases.' Branch, 526 So.2d at 626, n. 13. See, e.g., Powell v. State, 548 So.2d 590, 594 (Ala.Cr.App. 1988) aff'd, 548 So.2d 605 (Ala. 1989) (wherein the court noted that the teacher-veniremember's failure to answer a specific voir dire question calling for any opposition to the death penalty refuted the prosecution's assumption of the group bias that teachers are less prone to invoke the death penalty); Harrell, 571 So.2d at 1272 (veniremembers' responses on voir dire did not support the state's proffered reasons). The record offers nothing to give validity to the prosecutor's assumption about these two veniremembers. Compare Coral v. State, [628 So.2d 954] (Ala.Cr.App. 1992) (in a capital case, the striking of a minister's wife was upheld where a white minister's wife was also struck); *Page 1178 Hart v. State, 612 So.2d 520 (Ala.Cr.App. 1992) (upholding the strike of a minister's wife, but acknowledging that this reason may be suspect); Yelder v. State, [630 So.2d 92] (Ala.Cr.App. 1991) (in a noncapital case, the striking of a minister was considered race-neutral where the veniremember was involved in prison ministry and where a white veniremember was struck because her husband was a retired minister); Fisher v. State, 587 So.2d at 1036-37 (strike of minister upheld where victim's family had informed the prosecutor that it knew the veniremember, that he would not vote to convict the defendant in any event, and that it did not like him and where the prosecution had sought to challenge this veniremember for cause because of his feelings about capital punishment); Warner v. State, 594 So.2d 664, 666 (Ala.Cr.App. 1991), rev'd, 594 So.2d 676 (Ala. 1991) (reason for strike of minister considered race-neutral, in a capital case, where minister proclaimed that he did not believe in the death penalty and he knew one of the defendants); Bass v. State, 585 So.2d 225, 237 (Ala.Cr.App. 1991) (in a noncapital case, strike of `preacher' wearing a large cross was race-neutral where a minister was going to be a defense witness); Currin v. State, 535 So.2d 221
(Ala.Cr.App.), cert. denied, 535 So.2d 225 (Ala. 1988) (in a noncapital case, the strike of a minister was upheld; no voir dire response was discussed)."
In this case, potential juror P.E. did not respond to general voir dire questioning about whether there was any reason any potential juror could not give the State or the defendant a fair and impartial trial and whether any potential juror's religious beliefs would cause a problem returning a guilty verdict. In addition, the prosecutor did not ask her any follow-up questions. The record simply does not support the prosecutor's reasons for striking potential juror P.E. Furthermore, unlike the prosecutor in Giles v. State, [Ms. CR-98-2148, September 29, 2000] ___ So.2d ___ (Ala.Crim.App. 2000), the prosecutor in this case did not state that his presumptions about potential juror P.E. were based on his personal knowledge about P.E. Rather, it appears that the prosecutor presumed that, because her husband was a pastor, potential juror P.E. would not be a strong law enforcement juror and might tend to forgive and forget. Based on the rationale set forth in Walker, we conclude that the prosecutor's reasons for striking potential juror P.E. were not race-neutral and that the trial court's denial of the appellant's Batson
motion was clearly erroneous. "[O]ne unconstitutional peremptory strike requires reversal and a new trial." Ex parte Bird, 594 So.2d 676, 683
(Ala. 1991).[1] Accordingly, we reverse the trial court's judgment and remand this case to the trial court for a new trial.
REVERSED AND REMANDED.
Long, P.J., and McMillan and Cobb, JJ., concur; Fry, J., recuses himself.
[1] Therefore, we need not address the prosecutor's reasons for his remaining strikes or the other issues the appellant raises in his brief to this court. However, "[o]ur decision not to address [the merits of] the remaining issues raised by the appellant should not be construed as an approval of the manner in which the trial was conducted in regard to those issues." Fletcher v. State, 621 So.2d 1010, 1024 (Ala.Crim.App. 1993).
 *Page 277