BASCHAB, Judge.
The appellant, Steven L. Preachers, was convicted of capital murder for the killing of Angel Marie 'Whitley. The murder was made capital because the victim was less than fourteen years of age. See § 13A-5- *163 40(a)(18), Ala.Code 1975. The trial court sentenced him to imprisonment for life without the possibility of parole.[1] This appeal followed.
The appellant argues that the trial court improperly denied his motion pursuant to Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), after the prosecutor allegedly used his peremptory challenges in a racially discriminatory manner. In his brief to this court, he specifically contends, as he did at trial, that the prosecutor’s reasons for striking Venire-members F.L., Q.R., and E.W. were pre-textual.
The record indicates that the prosecutor struck the following veniremembers in the following order:
1. C.S. — a 62 year old white female from Samson
2. A.V. — a 19 year old white male from Samson
3. B.D. — a 29 year old white female from Samson
4. F.L. — a 51 year old black male from Geneva
5. Q.R. — a 19 year old black male from Samson
6. M.S. — a 77 year old white female from Samson
7. R.M. — a 70 year old white female from Samson
8. C.S. — a 27 year old white male from Samson
9. S.H. — a 47 year old white female from Samson who had previously been arrested
10. R.A. — a 49 year old white male from Chancellor
11. R.F. — a 29 year old white male from Samson who had previously been arrested
12. R.D. — a 48 year old white female from Hartford
13. L.H. — a 23 year old white female from close to Samson
14. L.H. — a 62 year old white female from Chancellor
15. W.M. — a 33 year old white female from Samson who had previously been arrested
16. P.T. — a 49 year old white female from Hartford
17. J.H. — a 65 year old white male from Hartford
18. E.W. — a 20 year old black female from Hartford
19. L.W. — a 64 year old white female from Slocomb
20. C.D. — a 47 year old white female from Hartford
The record indicates that the defense struck the following veniremembers in the following order:
1. E.T. — a 58 year old black male from Geneva
2. D.H. — an 82 year old white male from Geneva
3. T.B. — a 33 year old white male from Geneva
4. O.C. — a 66 year old white male from Geneva
5. H.C. — a 39 year old white male from Hartford who had previously been arrested '
6. F.W. — a 65 year old white female from Slocomb
7. T.S. — a 60 year old white male from Geneva
*164 8. R.R. — a 59 year old white male from Slocomb who had previously been arrested
9. B.D. — a 51 year old white female from Geneva who had previously been arrested
10. D.G. — a 36 year old white female from Chancellor
11. G.H. — a 61 year old white male from Coffee Springs
12. D.L. — a 31 year old white female from Slocomb who had previously been arrested
13. H.V.H. — a 19 year old white female from Slocomb
14. R.J. — a 78 year old white female from Geneva
15. C.J. — a 48 year old white female from Malvern
16. J.J. — a 61 year old white male from Slocomb who had previously been arrested
17. P.W. — a 42 year old white male from Black who had previously been arrested
18. K.H. — a 41 year old white female from Black
19. S.S. — a 51 year old white male from Slocomb
After the jury was struck but before it was sworn, the following occurred:
“[DEFENSE COUNSEL]: Judge, at this time the defendant makes a motion pursuant to Batson in that we believe the State has used a discriminatory practice in selection of jurors in this case. Specifically we would show there were four members of the venire that we struck from who were black. The defense struck juror Number 178, who was [E.T.] — He was struck because he was a retired state trooper. We would show that for their fourth strike the State struck juror number 117, [F.L.]. They struck juror number 147, [Q.R.] with their fifth strike. They struck number — juror number 192, [E.W.], with their 18th strike. There were four total — The defense struck one, the State struck all three other black members of the venire. We think that establishes a prima facie case of racial discrimination in the jury selection process in that the State struck all remaining black jurors.
“THE COURT: For the State?
“MR. SMITH: Your Honor, if the Court would like me to explain, give reasons for the strikes.
“THE COURT: That will be fine.
“MR. SMITH: [Q.R.], number 147, is 19 years old and from Samson. Those are the reasons why, the age and the fact that he’s from Samson, the town where the defendant resides, were the basis for that strike. Number 170 — 192, [E.W.], it was age, only 20 years old. That was the basis for that strike. And [F.L.], I believe that’s number 117, [F.L.] has been arrested before. And the State was advised of that from law enforcement, and that was the basis for that strike.
“THE COURT: Okay. The Court is going to find that the defendant has failed to make a prima facie case for a Batson motion, and the motion will be denied.
“[DEFENSE COUNSEL]: Judge, we would like an opportunity to respond to the State’s reasons. Number one, I believe [F.L.] did not respond in the questionnaire that he had been arrested. He answered no. Question is, did the State follow up in voir dire to determine whether hé was the actual person that they had heard may have been arrested; that if they didn’t, that it’s just a pretex-tual reason for striking him. They made no inquiry of him, of why he an *165 swered no. And I don’t know that they did any verification through any official sources that he, in fact, had been arrested before. Concerning the second one, Ms. — I mean, [Q.R.]. The fact that he was 19 is merely a pretextual reason for a jury strike in this case. Aso the fact that he’s from Samson. I’ll have to check the records, but I believe other jurors from Samson were left on the venire that were white. I’m not sure of that, I’ll have to check to verify. As far as [E.W.], just a simple fact of her age doesn’t establish any legitimate reason for a strike. There’s no reason to think that a person’s age is a factor to be able to serve on a jury in this case. The defendant is 34 years old. He’s not some teenager that they were gonna identify with particularly or anything. And for those reasons we think that the State has not established that the reasons for striking were race neutral.
“THE COURT: Okay.
“[SECOND DEFENSE COUNSEL]: And, Your Honor, additionally we would certainly be interested in the State’s assertion that they checked the criminal record of all of the individuals that were on this jury venire, and if so what the results were.
“THE COURT: Motion is denied.
“[DEFENSE COUNSEL]: And again, Your Honor, we would state that pursuant to Batson v. Kentucky violation of the Fourteenth Amendment right the defendant has to a fair and impartial jury.
“THE COURT: Okay. Your objection to the ruling is so noted.”
(R. 567-71.) Shortly thereafter, the following also occurred:
“[DEFENSE COUNSEL]: Your Honor, further, if I could reopen the Batson issue, please. The State stated that juror number 117, [F.L.], was struck because they had information from law enforcement he had been arrested before. Can I inquire what he had been arrested for?
“[PROSECUTOR]: All I know is that he’s been in jail, and I maybe should clarify that, that he has been in the county jail for some purpose and some reason. And I believe he was arrested. I don’t know.
“[DEFENSE COUNSEL]: Do you know when?
“[PROSECUTOR]: I’m not — unless the Court wants me to answer that, and that I’ll be happy to do that.
“THE COURT: I’ll direct you disclose any information that you have.
“[PROSECUTOR]: Ml I know that I was advised by a law enforcement officer that he had been in jail, and that implied that he’s been arrested. But he’s been in the county jail.
“[DEFENSE COUNSEL]: You didn’t have any information about when or what or whether it was 20 years ago, last year?
“[PROSECUTOR]: I didn’t ask.
“[DEFENSE COUNSEL]: Judge, we would first state that the fact that the State didn’t inquire in any of those details and determine their relevance— certainly if he was arrested 20 years ago for disorderly conduct would be way less relevant than if he were arrested last year on some felony or something of that nature. That goes to show the pretextual nature of their strike and that it was not for a race-neutral reason.
“Further, white juror number 177, [J.E.T.], had been arrested before. The state also did not question [J.E.T.] concerning his views toward law enforcement and his ability to be fair and impartial in this case and did not strike him. And the appellate courts require *166 that when we look at situations where jurors of similar backgrounds or histories and a black one is struck and a white one is left on the jury and there’s no apparent reason for that, that’s a prima facie showing of racial discrimination by the prosecution.
“We would further ask that you give us a few minutes to go back and check— and it won’t take very long — to see if there were any other jurors, white jurors from Samson area, who were, in fact, left on the jury, since that was their reason for — one of the reasons for striking the juror number 147, [Q.R.].
“THE COURT: Okay. That request is denied. The motion is denied.”
(R. 575-78.)
“In Batson the United States Supreme Court held that black veniremembers could not be struck from a black defendant’s jury because of their race. In Powers v. Ohio, 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991), the court extended its decision in Batson to apply also to white defendants.... The United States Supreme Court in Georgia v. McCollum, 505 U.S. 42, 112 S.Ct. 2348, 120 L.Ed.2d 33 (1992), held that the protections of Batson were also available to defense counsel in criminal trials. The Alabama Supreme Court has held that the protections of Batson apply to the striking of white prospective jurors. White Consolidated Industries, Inc. v. American Liberty Insurance, Co., 617 So.2d 657 (Ala.1993).”
Grimsley v. State, 678 So.2d 1194, 1195 (Ala.Crim.App.1995).
“After the appellant makes a timely Bat-son motion and establishes a prima facie showing of discrimination, the burden shifts to the state to provide a race-neutral reason for each strike.... See, e.g., Ex parte Bird, 594 So.2d 676 (Ala.1991). We will reverse the circuit court’s ruling on the Batson motion only if it is ‘clearly erroneous.’ Jackson v. State, 549 So.2d 616 (Ala.Cr.App.1989).”
Cooper v. State, 611 So.2d 460, 463 (Ala.Crim.App.1992).
“Once the prosecutor has articulated a nondiscriminatory reason for challenging the black jurors, the other side can offer evidence showing that the reasons or explanations are merely a sham or pretext. [People v.] Wheeler, 22 Cal.3d [258] at 282, 583 P.2d [748] at 763-64, 148 Cal.Rptr. [890] at 906 [(1978)]. Other than reasons that are obviously contrived, the following are illustrative of the types of evidence that can be used to show sham or pretext:
“1. The reasons given are not related to the facts of the case.
“2. There was a lack of questioning to the challenged juror, or a lack of meaningful questions:
“3. Disparate treatment — persons with the same or similar characteristics as the challenged juror were not struck....
■ “4. Disparate examination of members of the venire; e.g., a question designed to provoke a certain response that is likely to disqualify the juror was asked to black jurors, but not to white jurors....
“5. The prosecutor, having 6 peremptory challenges, used 2 to remove the only 2 blacks remaining on the venire...:
“6. ‘[A]n explanation based on a group bias where the group trait is not shown to apply to the challenged juror specifically.’ Slappy [v. State], 503 So.2d [350] at 355 [ (Fla.Dist.Ct.App.1987) ]. For instance, an assumption that teachers as a class are too liberal, without any specific questions having been direct *167 ed to the panel or the individual juror showing the potentially liberal nature of the challenged juror.”
Ex parte Branch, 526 So.2d 609, 624 (Ala.1987).
In this case, the defense based its Batson motion solely on the number of black veniremembers the prosecution struck.
“Alabama courts have recently held that even a showing that [a] party had ... a high percentage of strikes used against a minority was not alone enough. In Ex parte Trawick, 698 So.2d 162, 168 (Ala.1997), the Alabama Supreme Court held, ‘Without more, we do not find that the number of strikes this prosecutor used to remove women from the venire is sufficient to establish a prima facie case of gender discrimination.’ ”
Armstrong v. State, 710 So.2d 531, 533 (Ala.Crim.App.1997). Because the defense relied solely upon the number of blacks struck, we question whether it established a prima facie showing that the prosecutor exercised his peremptory challenges in a discriminatory manner. Nevertheless,
“[wjhere, as in this case, the trial court requires the opposing counsel to state reasons for the peremptory strikes without first requiring that a prima facie case of discrimination be established, this Court will review those reasons and the trial court’s ultimate decision on the Batson motion without determining whether the moving party met its burden of proving a prima facie case of discrimination.”
Harris v. State, 705 So.2d 542, 545 (Ala.Crim.App.1997).
The record supports the appellant’s assertions of disparate treatment with regard to Veniremember F.L. and Juror J.E.T. On his jury questionnaire, F.L. indicated that he had not been arrested, accused of a crime, or taken to jail for any reason. On his jury questionnaire, J.E.T. indicated that he had been arrested, accused of a crime, or taken to jail for driving under the influence of alcohol.[2]
We addressed a similar situation in Yancey v. State, 813 So.2d 1, 7-9 (Ala.Crim.App.2001), as follows:
“Though we have held that striking a prospective juror because of a prior criminal history is a race-neutral reason, we have also held that the failure to strike both whites and blacks because of prior criminal records is evidence of disparate treatment, in violation of Batson. See Powell v. State, 548 So.2d 590 (Ala.Crim.App.1988), aff'd, 548 So.2d 605 (Ala.1989). ‘Such disparate treatment of otherwise similarly situated persons who happen to be of different racial backgrounds, would evidence discriminatory intent in the State’s use of its strikes.’ Bishop v. State, 690 So.2d 498, 500 (Ala.Crim.App.1995), on remand, 690 So.2d 502 (Ala.Crim.App.1996). See also Russell v. State, 739 So.2d 58 (Ala.Crim.App.1999); Wright v. State, 601 So.2d 1095 (Ala.Crim.App.1991); and Mitchell v. State, 579 So.2d 45 (Ala.Cr.App.1991), cert. denied, 596 So.2d 954 (Ala.1992). The prosecutor’s reasons for striking prospective jurors numbers 93, 118, and 151, evidence disparate treatment.
“As this Court stated in Powell, 548 So.2d at 593-94:
“ ‘In view of the fact that five members of the jury were in their twenties *168 (the average age of the jury was only 31 years, 8 months) and seven members of the jury had had traffic offenses equally as serious as those of the black venirepersons who were struck by the State, we cannot escape the conclusion that the State engaged in the type of “disparate treatment” denounced in Branch. White “persons with the same or similar characteristics as the challenged [black] juror[s] were not struck.” Branch, 526 So.2d at 624. See Acres v. State, 548 So.2d 459 (Ala.Cr.App.1987) (on return to remand) (validity of prosecutor’s reasons for striking two black venireper-sons because they had had traffic citations did not “stand up under close .scrutiny” when record revealed that two white jurors who served on jury had similar traffic offenses). The State simply did not remove white persons for the same reasons given by the State for removing blacks. Compare Currin v. State, 535 So.2d 221 (Ala.Cr.App.1988) (“A reasonable conclusion ... is that [the prosecutor] applied the racially neutral criteria of education, employment, and demeanor to all jurors, whether black, [or] white -”) (quoting United States v. Allen, 666 F.Supp. 847, 854 (E.D.Va.1987)). See generally State v. Antwine, 743 S.W.2d 51, 65 (Mo.), cert. denied, Antwine v. Missouri, [486] U.S. [1017], 108 S.Ct. 1755, 100 L.Ed.2d 217 (1988), wherein the court found it highly relevant to consider “whether similarly situated white veniremen escaped the State’s challenges.” ’
“In Carrick v. State, 580 So.2d 31, 32 (Ala.Crim.App.1990), we stated:
“ ‘In the instant case, the State engaged in the type of disparate treatment denounced in Branch. See also Acres v. State, 548 So.2d 459 (Ala.Cr.App.1987) (wherein this Court held that the validity of the prosecutor’s reasons for striking two black venire-persons because they had had traffic citations did not “stand up under close scrutiny” when the record revealed that two white jurors who served on the jury had similar traffic offenses, at 473). Here, as in Acres; the State simply did not remove white persons for the same reasons given by the State for removing blacks.’
“ ‘ “[Disparate treatment furnishes strong evidence of discriminatory intent.” ’ Freeman v. State, 651 So.2d 576 (Ala.Crim.App.1994), quoting Ex parte Bird, 594 So.2d 676, 681 (Ala.1991), on remand, 594 So.2d 689 (Ala.Crim.App.1992). See also Kynard v. State, 631 So.2d 257 (Ala.Crim.App.1993). ‘This court has condemned the failure to strike white venirepersons who share the same characteristics as black venire-persons who were struck.’ Bishop v. State, 690 So.2d at 500.”
[[Image here]]
“... The voir dire in this case covered portions of five volumes of the record. It appears that the jurors were questioned equally about their views concerning capital punishment; however, there is no discussion concerning any prospective jurors’ prior misdemeanor offenses or traffic offenses. Thus, the voir dire provides no support for some of the reasons advanced by the prosecution. From the record it appears that the prosecutor engaged in disparate treatment when striking Yancey’s jury.”
See also Carter v. State, 603 So.2d 1137 (Ala.Crim.App.1992) (finding disparate treatment between black and white venire-members where two unemployed black veniremembers were struck but two unemployed white veniremembers were not struck); Sims v. State, 587 So.2d 1271, *169 1277 (Ala.Crim.App.1991) (noting that “many of the traits exhibited by the black veniremembers and given as reasons for challenging them were also exhibited by white members who went unchallenged by the state”). Finally, in Miller-El v. Dretke, 545 U.S. 231, 240, 125 S.Ct. 2317, 2325, 162 L.Ed.2d 196 (2005), the United States Supreme Court reiterated:
“If a prosecutor’s proffered reason for striking a black panelist applies just as well to an otherwise-similar nonblack who is permitted to serve, that is evidence tending to prove purposeful discrimination to be considered at Batson’s third step.”
We further find it relevant that the prosecutor did not ask any of the venire-members any questions about whether they had been arrested, accused of a crime, or taken to jail for any reason. Also, the prosecutor did not ask Venire-member F.L. to confirm or deny that he had been in the county jail before, even though he had indicated on his jury questionnaire that he had not previously been arrested, accused of a crime, or taken to jail for any reason. “[T]he failure of the State to engage in any meaningful voir dire on a subject of alleged concern is evidence that the explanation is a sham and a pretext for discrimination. Branch, 526 So.2d at 623.” Hemphill v. State, 610 So.2d 413, 416 (Ala.Crim.App.1992). See also Ex parte Bird, 594 So.2d 676 (Ala.1991); Guthrie v. State, 598 So.2d 1013 (Ala.Crim.App.1991); Madison v. State, 545 So.2d 94 (Ala.Crim.App.1987).
“It is well settled that the ruling of the trial court on a Batson hearing is entitled to substantial deference and will not be disturbed on review unless ⅜ is ‘clearly erroneous.’ Scales v. State, 539 So.2d 1074 (Ala.1988).” Ex parte Bankhead, 625 So.2d 1146, 1148 (Ala.1993). For the reasons set forth above, we are compelled to conclude that the prosecutor’s reason for striking Veniremember F.L. was no more than a pretext for racial discrimination. Moreover, the prosecutor’s reliance on age to strike Venire-members Q.R. and E.W. is also suspect.[3] However, we need not determine the propriety of those remaining strikes because “the failure to articulate a sufficient race-neutral reason for excluding even a single black veniremember may entitle the defendant to a new trial. Harrell v. State, 555 So.2d 263 (Ala.1989).” Id.
“[W]hen illegitimate grounds like race are in issue, a prosecutor simply has got to state his reasons as best he can and stand or fall on the plausibility of the reasons he gives. A Batson challenge does not call for a mere exercise in thinking up any rational basis. If the stated reason does not hold up, its pre-textual significance does not fade because a trial judge, or an appeals court, can imagine a reason that might not have been shown up as false.”
*170 Miller-El, 545 U.S. at 252, 125 S.Ct. at 2332. Accordingly, we are compelled to reverse the trial court’s judgment and to remand this case-for a new trial.
REVERSED AND REMANDED.
McMILLAN, P.J., and COBB and WISE, JJ., concur; SHAW, J., concurs in the result.

. The State did not seek the death penalty because there were not any aggravating dr-cumstances in this case.

. Of the veniremembers who completed questionnaires, thirteen indicated that they had been arrested, accused of a crime, or taken to jail for any reason. Of those thirteen venire-members, three were excused for cause, the prosecutor struck three, the defense struck six, and one (J.E.T.) served on the jury.

. "This Court has recognized that 'the age rationale is highly suspect because of its inherent susceptibility to abuse. Batson, 476 U.S. at 106, 106 S.Ct. at 1728 (Marshall, J., concurring).' Ex parte Bird, 594 So.2d 676, 683 (Ala.1991). In fact, ‘[a] mere summary declaration that age was a factor in the decision to strike is, therefore, constitutionally deficient and warrants reversal. Owens v. State, 531 So.2d 22, 26 (Ala.Crim.App.1987).’ Bird, 594 So.2d at 683. Despite its susceptibility to misuse, however, this Court has also noted:
" ‘[W]e realize that in certain cases age may serve as a legitimate racially neutral reason for a peremptory strike. See Harrell, 555 So.2d at 268 n. 1.’
“Bird, at 682-83."
Ex parte Brown, 686 So.2d 409, 416-17 (Ala.1996). See also Avery v. State, 545 So.2d 123 (Ala.Crim.App.1988); Floyd v. State, 539 So.2d 357 (Ala.Crim.App.1987).